UNITED STATES of America, Plaintiff,

v.

ONE 1986 MERCEDES BENZ, VIN WDBEA30D2GA143459, Defendant-in-Rem.

UNITED STATES of America, Plaintiff,

v.

$2,710 IN UNITED STATES CURRENCY, Defendant-in-Rem.

Nos. 86 Civ. 8247 (PKL), 86 Civ. 8248 (PKL).

United States District Court, S.D. New York.

May 20, 1987.

---

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Sarah Thomas-Gonzalez, of counsel), for plaintiff.

Holtzman & Hoffman, New York City (Stephen L. Hoffman, of counsel), for claimants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LEISURE, District Judge:

The complaints in these consolidated actions were filed on October 27, 1986. The warrant for arrest of the defendant Mercedes Benz was executed on December 5, 1986. The warrant for arrest of the defendant currency was executed on February 6, 1987. Cynthia Parker filed her claim to the Mercedes on January 16, 1987. Warmington Chow filed his claim to the currency on January 16, 1987. No other claims or petitions were filed in these actions. A non-jury trial was held on February 2–3, 1987. The following constitutes the Court's findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

### Findings of Fact

1. In February 1986, agents of the United States Drug Enforcement Administration (the "DEA") were involved in an investigation at 42 West 128th Street, New York, New York. Tr. at 13–14.[1] A DEA undercover agent purchased a large quantity of heroin at that location. Tr. at 14.

---

1. References in the form "Tr. at __" are to the transcript of the trial proceedings in this matter.

412

2. On June 6, 1986, DEA agents were again on surveillance in the area of 42 West 128th Street in an attempt to execute an arrest warrant on one of the targets of the aforesaid investigation. Tr. at 14. While located a short distance from the building, Sergeant Louis Sciscioli and Agent Gabriella Zacco observed a distinctive 1986 Mercedes Benz being followed by a Jeep Laredo. Tr. at 15, 45. The vehicles ran a red light, turned onto West 128th Street and stopped in front of 42 West 128th Street. Tr. at 15, 45. Sciscioli testified that, based on his experience, he concluded the Mercedes and the Jeep were driving in tandem and the Jeep was "shotgunning" the Merecedes to protect someone of importance or something of value. Tr. at 47.

3. Sciscioli recognized the Mercedes, which has dark tinted windows, a gold-colored metal grill, gold-colored wheel hubs, a skirt and a spoiler, from its description. Tr. at 15, 45, 56, 68. He believed the car belonged to Cynthia Parker, and he verified by a check, according to the license plate, that she was the registered owner. Tr. at 15, 45.

4. The DEA had received information earlier that year about a crack operation run by Chow and Parker in Harlem on St. Nicholas Avenue and Lenox Avenue. Tr. at 15–16, 45–46. Based on information received from New York State police sources, the DEA had opened its own investigation of Chow and Parker. Tr. at 15, 46.

5. Prior to June 6, 1986, Sciscioli had been told by one of his agents that Chow had been arrested by state police on April 15, 1986 for vehicle, traffic, and weapons charges. Tr. at 67, 76, 78; Exh. 18. Sciscioli had been told that at the time of the arrest, Chow was driving the Mercedes and Parker was a passenger. Tr. at 78. Sciscioli had learned that a search of the car revealed $20,000 in small denominations of U.S. currency, assembled in packets of $1000, each folded in half and secured with rubber bands. Tr. at 79. The money was found in a plastic shopping bag in Parker's handbag. Tr. at 79.

6. Using its own informants, the DEA verified that crack was being sold at the St. Nicholas Avenue and Lenox Avenue locations. Tr. at 46. Arrests were made, after June 6, 1986, at the Lenox Avenue location, but not at the St. Nicholas Avenue location.

7. Sciscioli and Zacco saw Warmington Chow get out of the Mercedes, another man get out of the Jeep, and both walk into the building. Tr. at 17, 45. After about 20 minutes Chow and the other man came out of the building, returned to their separate vehicles and proceeded down the block toward Fifth Avenue. Tr. at 17, 48. The agents noticed that, as he left the building, Chow appeared to be carrying a package underneath his arm. Tr. at 17, 48. He had entered the building empty-handed. Tr. at 48.

8. Sciscioli and Zacco stopped both vehicles and other DEA units arrived at the scene to provide assistance. Tr. at 17–18, 48. The occupants of the Mercedes, driver Warmington Chow, front seat passenger Yvonne Gonzalez and back seat passenger Corey Chow, were taken out of the car and were frisked for weapons. Tr. at 18, 48.

9. Zacco saw a brown paper bag in the front seat. Tr. at 18. Observing that the bag was open and that it contained money, she took custody of it. Tr. at 19–20, 48; Exh. 2, 3. Zacco counted the money in front of the car's occupants, and determined that it amounted to $2,710. Tr. at 22. She noted that there were rubber bands around each denomination of bills, and that the bills appeared to be old. Tr. at 20. Zacco testified that, based on her experience, she believed the currency was "street money," rather than new bills from a bank. Tr. at 20–21.

10. Sciscioli searched the rear of the car on the driver's side and found the remains of a marijuana cigarette in the ashtray. Tr. at 49–50, 75; Exh. 1. It had been smoked down to the end. Tr. at 20.

11. The agents transported the Mercedes to the DEA office at 57th Street, processed the marijuana, processed the money, issued the summonses required under state law, and informed the occupants

that the vehicle was going to be seized. Tr. at 50.

12. The Mercedes was used to transport marijuana. Tr. at 50. Although claimamts allege that the marijuana found in the Mercedes was planted by an unidentified DEA agent, tr. at 204–05, the testimony of Warmington Chow, Corey Chow and Gonzalez with respect to this contention was not credible. For example, none of the three could give a coherent description of the agent alleged to have planted the marijuana stub. Tr. at 194, 208, 238.

13. Claimants allege that Warmington Chow's mother, Jean Ramsay, handed him $3000 in cash in a brown paper bag with instructions to give the money to Parker, Chow's girl friend. They allege that Parker was to purchase airline tickets for Ramsay and use the remainder to pay for insurance on the Mercedes. Tr. at 122, 242–44. Claimants further contend that Chow spent $290 on clothing, without his mother's permission. Tr. at 154, 164. These contentions would account for the presence of $2710 in the Mercedes. However, the testimony of those allegedly with knowledge of this transaction, Warmington Chow, Parker, Ramsay, and Corey Chow, was not credible in this regard and was contradicted by the documents produced at trial, tr. at 102, 152.

14. For example, at the time when Parker spoke with Ramsay regarding her car insurance, Parker had not yet received her insurance bill. Tr. at 120–22. In addition, Parker had no immediate need for a loan from Ramsay since her first insurance payment was not due for another month. Tr. at 123; Exh. F.

15. Warmington Chow did not purchase clothing worth $290 on June 6, 1986. The "bill" produced at trial was a short form bill of lading which contained no store name or address and which lists clothing different from the items Chow claims to have purchased. Tr. 170–71; Exh. G, H. It was obtained after the car and currency were seized. Tr. 152, 171. Moreover, no new clothing was found in the trunk of the Mercedes when DEA agents stopped and searched the car on June 6, 1986. Tr. 41, 65–66.

16. Testimony presented by the claimants regarding the source of part of the funds used to purchase the Mercedes and the source of the $20,000 found in Parker's handbag on April 15, 1986 is not material to claimants' attempt to meet their burden of proof with respect to the Mercedes and the $2710 in currency.

*Conclusions of Law*

17. The Court has jurisdiction over these actions pursuant to 21 U.S.C. § 881.

18. The statute governing these actions provides that a vehicle shall be subject to forfeiture if it is "used, or [is] intended for use, to transport, or in any manner to facilitate the transportation, sale, receipt, possession, or concealment of" controlled substances. 21 U.S.C. § 881(a)(4). In addition, all money which is "furnished or intended to be furnished by any person in exchange for a controlled substance" or "used or intended to be used to facilitate any violation" of 21 U.S.C. §§ 801 et seq. shall be subject to forfeiture. 21 U.S.C. § 881(a)(6).

19. In order for the Government to obtain a judgment of forfeiture, it must establish probable cause. *See, e.g., United States v. All Funds and Other Property Contained in Account Number 031–217362,* No. 83 Civ. 354, slip op. at 4 (S.D. N.Y. Oct. 16, 1986) [Available on WESTLAW—DCT database]. The probable cause standard requires the Government to "have reasonable grounds to believe that certain property is subject to forfeiture. These grounds must rise above the level of mere suspicion but need not amount to what has been termed 'prima facie proof.' " *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir.1986) (citations omitted).

20. Expert testimony by the government fact witnesses was admissible. *See* ¶¶ 2, 9 *supra. United States v. Young,* 745 F.2d 733, 760–61 (2d Cir.1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1842, 85 L.Ed.2d 142 (1985); *United States v. Brown,* 776 F.2d 397, 400–02 (2d Cir.1985),

*cert. denied,* —— U.S. ——, 106 S.Ct. 1793, 90 L.Ed.2d 339 (1986); *United States v. Carson,* 702 F.2d 351, 369 (2d Cir.), *cert. denied,* 462 U.S. 1108, 103 S.Ct. 2456, 77 L.Ed.2d 1335 (1983).

21. "Hearsay evidence is admissible in a forfeiture proceeding to the same extent that it is admissible in any other 'probable cause' hearing." *United States v. United States Currency Totaling $87,279,* 546 F. Supp. 1120, 1126 (S.D.Ga.1982) (citation omitted). *Accord United States v. One 56-foot Motor Yacht Named the Tahuna,* 702 F.2d 1276, 1283 (9th Cir.1983); *United States v. 1964 Beechcraft Baron Aircraft,* 691 F.2d 725, 728 (5th Cir.1982), *cert. denied,* 461 U.S. 914, 103 S.Ct. 1893, 77 L.Ed.2d 283 (1983); *United States v. One 1974 Porsche 911–S,* 682 F.2d 283, 286 (1st Cir.1982). *See also* Claimants' Post Trial Brief at 8.

22. The Government may satisfy the probable cause requirement by showing a connection or nexus between the seized property and narcotics activity, but need not link the property to a particular transaction. *Banco Cafetero Panama,* 797 F.2d at 1160 (citations omitted).

23. The Court has already ruled, at the conclusion of the plaintiff's proof at trial, that the DEA agents had probable cause to seize the Mercedes Benz and to seize the $2710 in United States currency. Claimants now concede that probable cause existed for the confiscation of the vehicle and cash. *See* Claimants' Proposed Findings of Fact, ¶ 5.

24. Once probable cause is established, then "the claimant bears the ultimate burden of proving that the factual predicates for forfeiture have not been met." *Banco Cafetero Panama,* 797 F.2d at 1160. *See also United States v. $93,685.61 in U.S. Currency,* 730 F.2d 571, 572 (9th Cir.), *cert. denied,* 469 U.S. 831, 105 S.Ct. 119, 83 L.Ed.2d 61 (1984); *All Funds and Other Property,* No. 83 Civ. 354, slip op. at 4; *United States v. One 1980 Chevrolet Blazer Automobile,* 572 F.Supp. 994, 996 (E.D. N.Y.1983); *United States v. $131,602.00 in U.S. Currency,* 563 F.Supp. 921, 923 (S.D. N.Y.1982).

25. "In view of the sweeping language of the forfeiture statute, it is of no legal significance that the amounts of controlled substances in question were relatively small; or that the cocaine may have been intended for [the claimant's] own personal use, and not intended for sale or resale to others." *United States v. One 1975 Mercury Monarch,* 423 F.Supp. 1026, 1029 (S.D.N.Y.1976). The "mere possession of a minute amount of drugs" may suffice to subject a vehicle to forfeiture. *United States v. One 1973 Jaguar Coupe,* 431 F.Supp. 128, 130 (S.D.N.Y.1977) (citation omitted). *See also United States v. One 1974 Cadillac Eldorado Sedan,* 548 F.2d 421, 425 (2d Cir.1977) (impliedly accepting proposition that "transportation of any quantity of drugs however minute" is sufficient to warrant forfeiture); *United States v. One 1975 Mercedes 280S,* 590 F.2d 196, 198 (6th Cir.1978) ("any measurable amount" of marijuana held sufficient to support forfeiture). *Cf. Calero-Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 669, 693, 94 S.Ct. 2080, 2085, 2096, 40 L.Ed.2d 452 (1974) (one marijuana cigarette).

26. Property may be forfeited "even though the owner was not a participant in and had no knowledge of the illegal acts which brought about the forfeiture." *United States v. One Tintoretto Painting,* 691 F.2d 603, 606 (2d Cir.1982). *See also Pearson Yacht Leasing Co.,* 416 U.S. at 683, 94 S.Ct. at 2092; *United States v. One Mercedes Benz 380 SEL,* 604 F.Supp. 1307, 1312 (S.D.N.Y.1984), *aff'd,* 762 F.2d 991 (2d Cir.1985).

27. The lack of a criminal conviction on charges related to the incident giving rise to the forfeiture is not a valid defense to the forfeiture. *United States v. One 1977 Lincoln Mark V,* 453 F.Supp. 1388, 1391 (S.D.N.Y.1978); *One 1973 Jaguar Coupe,* 431 F.Supp. at 131.

28. Claimant Cynthia Parker failed to establish by a preponderance of the evidence that the Mercedes was not used to transport a controlled substance, and therefore the vehicle is forfeitable pursuant to 21 U.S.C. § 881(a)(4).

■ 29. Claimant Warmington Chow failed to establish by a preponderance of the evidence that the $2710 in United States currency was not used or intended to be used in violation of 21 U.S.C. §§ 801 et seq., and therefore the money is forfeitable pursuant to 21 U.S.C. § 881(a)(6).

SO ORDERED.