**UNITED STATES of America, Plaintiff,**

v.

**316 UNITS OF MUNICIPAL SECURITIES IN THE NAME OF EFRAIN GONZALEZ and 195 Units of Municipal Securities in the Name of Sergio Gonzalez, Held at U.S. Trust, Defendants-in-rem.**

No. 87 Civ. 1875 (WCC).

United States District Court, S.D. New York.

Nov. 20, 1989.

Otto G. Obermaier, U.S. Atty., S.D.N.Y., New York City, for plaintiff; Pamela L. Dempsey, Asst. U.S. Atty., of counsel.

Joel Martin Aurnou, White Plains, N.Y., for defendants-in-rem.

## OPINION AND ORDER

WILLIAM C. CONNER, District Judge.

Plaintiff United States of America (hereinafter "the government") brings this claim for civil forfeiture, pursuant to 18 U.S.C. § 981, of securities which allegedly represent the proceeds of transactions "structured" to avoid federal reporting requirements in violation of 31 U.S.C. § 5324(3). The action is presently before the Court on claimants' motion for dismissal of the complaint or for summary judgment pursuant to Rules 12 and 56, Fed.R.Civ.P. The government cross-moves for summary judgment. Claimants' motion is denied and the government's motion is granted as to (i) probable cause and (ii) two claimants' preclusion of the "innocent owner" defense.

### Background

This civil forfeiture action arises as a by-product of criminal money laundering charges that were brought in the United States District Court for the Southern District of Texas and subsequently dismissed.

On January 27, 1987, Rene and Carmen Gonzalez brought Efrain Gonzalez, a claimant in the present action, to the brokerage firm of Eppler, Guerin & Turner, Inc. in McAllen, Texas for the purpose of buying securities. At that time, Rene Gonzalez had $200,000 in cash in his possession. After advising the Gonzalezes that the firm did not accept cash payments, Karen Valencia, a stockbroker employed by Eppler, Guerin & Turner, Inc., escorted the Gonzalezes to the Texas Commerce Bank in McAllen, Texas, to purchase a cashier's check in the amount of $200,000 in exchange for U.S. currency.

Rebecca Fischer, the teller, testified in the criminal trial that she explained to Valencia in English that transactions exceeding $10,000 were required to be reported to the Internal Revenue Service. Claimants assert that Fischer described this necessity as a bank policy. Fischer stated that she then told the Gonzalezes in English about the reporting requirement. Richard DeLeon, the bank's operations officer, testified that he further explained to Valencia and the Gonzalezes in a hybrid of English and Spanish that federal law required the reporting of transactions exceeding $10,-000. DeLeon stated that he then heard the group discussing in English and Spanish the possibility of conducting numerous transactions at different banks for amounts less than $10,000. The Gonzalezes then decided not to conduct the $200,-000 transaction. Claimants assert that they have no knowledge of English.

From January 28, 1987 to February 24, 1987, Rene, Carmen and Efrain Gonzalez purchased 40 cashier's checks in the names of Carmen Gonzalez, Sandra Gonzalez, Zandra Gonzalez, Efrain Gonzalez, Maria Ortiz, Estella Gonzalez and Sergio Gonzalez, in amounts ranging from $4,500 to $9,500, from eleven banks in McAllen, Alamo and Pharr, Texas.

On February 3, 1987, the sum of $196,-250, consisting of 25 cashier's checks and two personal checks, was deposited into Efrain Gonzalez' account at Eppler, Guerin & Turner, Inc. On or about February 5, 1987, the firm purchased 316 units of municipal securities in a pool of municipal securities held by U.S. Trust for the account of Efrain Gonzalez.

On February 24, 1987, Sergio Gonzalez opened an account at Eppler, Guerin & Turner, Inc., with a power of attorney to Carmen and Rene Gonzalez and deposited $122,000, consisting of fifteen cashier's checks. That same day, the firm purchased 195 units of the same municipal securities bought for Efrain Gonzalez for the account of Sergio Gonzalez.

Rene Gonzalez told Special Agent Evans of the Internal Revenue Service, Criminal Division, that Efrain and Sergio Gonzalez, both Mexican nationals, did not want any documentation which could be turned over to Mexico reflecting funds in the United States.

On or about May 19, 1987, Valencia, and Rene, Carmen, Sergio and Efrain Gonzalez were indicted in the Southern District of

Texas, Brownsville Division, for criminal violations involving "structuring" of currency transactions.

On July 13, 1987, the indictment against Efrain and Sergio Gonzalez was dismissed by United States District Judge Hinojosa, and on July 14, 1987, the court granted motions for judgments of acquittal as to the remaining defendants, stating, "there is no evidence that these defendants had any knowledge that it was against the law to structure or assist in structuring or attempting to structure any transaction with one or more domestic financial institutions." Judge Hinojosa ruled that actual knowledge of the anti-structuring statute was essential to a criminal conviction.

In this separate civil proceeding, the government seized all of the securities held in the names of Sergio and Efrain Gonzalez. The securities in the two accounts belong 60% to Efrain Gonzalez, and 13⅓% each to Sergio, Estella, and Sandra Gonzalez.

### Discussion

A party seeking summary judgment must demonstrate that "there is no genuine issue as to any material fact." Fed.R. Civ.P. 56(c); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762 (1987); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). It must establish that there is a "genuine issue for trial." *Id.* at 587, 106 S.Ct. at 1356. "In considering the motion, the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and

drawing reasonable inferences against the moving party." *Knight*, 804 F.2d at 11. The inquiry under a motion for summary judgment is thus the same as that under a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

### Claimants' Summary Judgment Motion

■ Claimants argue that the government is collaterally estopped from pursuing this civil forfeiture action because the Texas district court dismissed the related criminal action, specifically finding that the defendants had no actual knowledge that "structuring" transactions to avoid federal reporting requirements was illegal. In opposition to claimants' motion, the government contends (i) that the different burdens of proof relating to criminal and civil cases preclude collateral estoppel and (ii) that neither the criminal nor civil forfeiture statute demands actual knowledge of the anti-structuring statute.[1] For the following reasons, claimants' motion is denied.

Supreme Court and Second Circuit case law firmly establish that a criminal acquittal does not prevent the government from seeking civil forfeiture of the defendant's property even when it is based upon exactly the same conduct alleged to have been criminal in the prior prosecution. *See United States v. One Assortment of 89 Firearms*, 465 U.S. 354, 104 S.Ct. 1099, 79 L.Ed.2d 361 (1984); *One Lot Emerald Cut Stones and One Ring v. United States*, 409 U.S. 232, 93 S.Ct. 489, 34 L.Ed.2d 438 (1972). The Supreme Court has explained that the different burdens of proof in criminal and civil suits preclude application of the doctrines of res judicata or collateral estoppel. *89 Firearms*, 465 U.S. at 357–66, 104 S.Ct. at 1102–07. The Court further

---

1. The government contends that the criminal charges against defendants were wrongly dismissed. The government protests that neither the criminal nor civil forfeiture statute requires actual knowledge of the anti-structuring statute. While this Court may inquire into the necessary elements of the criminal statute for analysis of the present civil forfeiture action, it may not review the Texas district court's decision.

clarified that "neither collateral estoppel nor double jeopardy bars a civil, remedial forfeiture proceeding initiated following an acquittal on related criminal charges." *Id.* at 361, 104 S.Ct. at 1104; *see United States v. Dunn,* 802 F.2d 646, 649 (2d Cir.1986), *cert. denied,* 480 U.S. 931, 107 S.Ct. 1568, 94 L.Ed.2d 760 (1987); *United States v. One 1986 Mercedes Benz,* 660 F.Supp. 410, 414 (S.D.N.Y.1987), *aff'd,* 846 F.2d 2 (2d Cir.1988). Thus, it is clear that when both a criminal action and a civil forfeiture arise out of the same wrongful conduct, dismissal of the criminal charges has no collateral estoppel effect upon the forfeiture.

■ Claimants inappropriately rely on *Emerald Cut Stones* for their contention that because the issue of actual knowledge of the anti-structuring statute was resolved against the government in the prior criminal proceeding, it is now collaterally estopped from pursuing this action. Claimants assert that the issue resolved against the government provides the statutory "innocent owner" defense to civil forfeiture.[2] In *Emerald Cut Stones,* the Supreme Court stated that, "[c]ollateral estoppel would bar a forfeiture ... if, in the earlier criminal proceeding, the elements of a ... forfeiture had been resolved against the Government." *Id.* at 234, 93 S.Ct. at 491. In that case, however, dismissal of the criminal action did not resolve the forfeiture issues because the criminal statute required proof of additional elements. But more important to the resolution of the current motion, the Court continued, "[m]oreover, the difference in the burden of proof in criminal and civil cases precludes application of the doctrine of collateral estoppel.... As to the issues raised, [an acquittal] does not constitute an adjudication on the preponderance-of-the-evidence burden applicable in civil proceedings." *Id.* at 235, 93 S.Ct. at 492. Therefore, even

where the issue is identical,[3] and the party against whom collateral estoppel is sought has had a full and fair opportunity to litigate the issue, collateral estoppel is inappropriate where the burdens of proof differ. The government's inability in the criminal trial to prove scienter beyond a reasonable doubt in no way has collateral estoppel effect on this civil action where the government's burden in its *prima facie* case is merely to establish probable cause for a forfeiture.

Claimants assert that there is no possible way that the government can meet even the lesser civil burden in light of the Texas district court's ruling in the related criminal case that there was "no evidence" that defendants had the requisite knowledge for conviction. This contention lacks merit for two reasons. First, the judge's statement, although in sweeping terms, is no more than dictum. Its only effective import is that the government was unable to meet its burden in a criminal case. This cannot defeat the government's right to contest the issue in this civil action. More significantly, as discussed hereinafter, the Court believes that actual knowledge of the anti-structuring statute is not mandated by either the criminal or civil forfeiture statute. Thus, the government need not present any evidence on this issue to sustain its forfeiture claim. Accordingly, claimants' summary judgment motion is denied.

*Governments' Summary Judgment Motion*

The government seeks summary judgment on the issues of (i) probable cause and (ii) preclusion of the statutory "innocent owner" defense. For the following reasons, the government's motion is granted as to probable cause and Efrain and Sergio Gonzalez's preclusion of the statutory defense.

---

**2.** 18 U.S.C. § 981(a)(2) provides the following "innocent owner" defense:

> No property shall be forfeited under this section to the extent of the interest of an owner or lienholder by reason of any act or omission established by that owner or lienholder to have been committed without the knowledge of that owner or lienholder.

**3.** The government maintains that neither the criminal nor the civil statute requires actual knowledge of the anti-structuring statute and alternatively, that the civil statute certainly does not demand actual knowledge.

■ The Second Circuit has held that to establish a *prima facie* case for forfeiture, the government "need only demonstrate probable cause for a forfeiture." *United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir.1986); *United States v. One 1986 Mercedes Benz,* 846 F.2d 2, 4 (2d Cir.1988). In order to satisfy the probable cause requirement, the government must show it had reasonable grounds to believe the property was subject to forfeiture. These grounds must rise to a level above "mere suspicion," but need not amount to "prima facie proof" (preponderance of the evidence standard). *Banco Cafetero Panama,* 797 F.2d at 1160 & n. 7.[4]

In this case, the government seeks forfeiture of the securities pursuant to 18 U.S.C. § 981(a)(1), which states that property is subject to forfeiture if it is:

> involved in a transaction or attempted transaction in violation of §§ 5313(a) or 5324 of title 31 ... or any property traceable to such property.

The statute allegedly violated in this case, 31 U.S.C. 5324(3), was passed as part of the "Comprehensive Anti–Drug Abuse Act of 1986," Public Law 99–570, 100 Stat. 3207 (Oct. 27, 1986), and subtitled the "Money Laundering Control Act of 1986." Section 5324(3) prohibits the "structuring" of currency transactions with domestic financial institutions for the purpose of evading the reporting requirements of 31 U.S.C. 5313(a). Section 5324(3) provides, in pertinent part, that:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—
>
> .    .    .    .    .

(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.[5]

■ Because the government proceeds against allegedly tainted property in a forfeiture proceeding, it is not necessary for the government to show that the present owner of the property participated in a violation of the statute or was even aware of the violation. This is because the basic nature of a forfeiture proceeding is *in rem,* reflecting the legal fiction that the property itself is guilty of facilitating the crime. *See Calero–Toledo v. Pearson Yacht Leasing Co,* 416 U.S. 663, 680, 94 S.Ct. 2080, 2090, 40 L.Ed.2d 452 (1974). Yet, the government must show probable cause that the property is tainted, in other words, that it was involved in a transaction or attempted transaction in violation of § 5324(3). Contrary to the government's assertion, it is the government's burden in establishing probable cause to prove both the prohibited conduct and the specific intent required by the statute. While the prohibited conduct is clearly "structuring," the specific intent is at issue in this case. Thus, inquiry is necessary as to whether actual knowledge of the anti-structuring statute is a component of a § 5324(3) violation or whether knowledge of the federal reporting requirements and intent to avoid them suffices.

■ No court in this jurisdiction has yet interpreted the scienter requirement of section 5324(3) for purposes of either a criminal conviction under that statute or a civil forfeiture under section 981. While the Texas district court decided that a criminal conviction requires defendant's knowledge that his conduct is prohibited, its ruling appears to conflict with a subsequent decision of the Court of Appeals for its own

---

**4.** As the government asserts and claimants concede, hearsay evidence is admissible in the Court's determination of probable cause. Because probable cause depends upon the legal sufficiency and reliability of the evidence and not its admissibility, "hearsay evidence is admissable in a forfeiture proceeding to the same extent that it is admissable in any other 'probable cause' hearing." *United States v. United States Currency Totaling $87, 279 & Cashier's Checks Totaling $15,000,* 546 F.Supp. 1120, 1126

(S.D.Ga.1982) (citing, *Bush v. United States,* 389 F.2d 485 (5th Cir.1968)); *United States v. One 1986 Mercedes Benz,* 660 F.Supp. 410, 414 (S.D. N.Y.1987), *aff'd,* 846 F.2d 2 (1988).

**5.** The reporting requirements referred to in the statute require domestic financial institutions to file a "Currency Transaction Report" (CTR) each time they engage in a currency transaction in excess of $10,000.

circuit. The Fifth Circuit Court interpreted the statute to mean that mere knowledge of the reporting requirements and the intent to circumvent them satisfies the specific intent required by section 5324(3). *See United States v. Camarena*, 863 F.2d 880 (5th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 3158, 104 L.Ed.2d 1021 (1989).

In *United States v. Camarena*, Camarena was convicted of 58 counts of unlawfully structuring currency transactions with financial institutions to evade federal currency reporting requirements. On appeal, Camarena did not dispute the government's claim that she "structured" the transactions in question, but argued that knowledge of the illegality of "structuring" was an essential element of the offense. She contended, as claimants do here and as the Texas District Court ruled, that "she was not guilty because she did not know that structuring was illegal." On appeal, the government insisted that it had to prove only that Camarena structured the transactions with knowledge of the reporting requirements and the specific intent to avoid them. In other words, the government argued that Camarena's ignorance of the prohibition against structuring is no defense if she knew of the filing requirements and intentionally acted to evade them.

The Fifth Circuit Court ruled that the legislative history and prior case law concerning section 5324(3) demonstrate that the required specific intent "is proved by evidence that [defendant] knew of the bank's legal obligation to report transactions in excess of $10,000 and acted with the bad purpose of defeating that law rather than for some innocent purpose." *Id.* at 6.

The legislative history of the statute reveals that 31 U.S.C. section 5324(3) was enacted to broaden the scope of the Bank Secrecy Act by criminalizing all currency transaction structuring schemes designed to evade the Act's reporting requirements regardless of whether the $10,000 threshold at a single financial institution on a single day had been met. As expressed in the Senate Report:

[Section 5324(3)] would create the offense of structuring a transaction to evade the reporting requirements, without regard to whether an individual transaction is, itself, reportable under Bank Secrecy Act. For example, a person who converts $18,000 in currency to cashier's checks by purchasing two $9,000 cashier's checks on two different days with the specific intent that the participating bank or banks not be required to file Currency Transaction Reports for those transactions, would be subject to potential civil and criminal liability.

S.Rep. No. 433 99th Cong., 2nd Sess. 22 (1986). The only intent noted in the Senate Report is the specific intent to cause a bank not to file CTR forms. Therefore, there can be no argument that the Court's interpretation violates the legislative intent. Moreover, to restrict prosecutions to those few cases in which the government could prove actual knowledge of the anti-structuring statute would contravene the legislative intent to broaden the scope of the currency reporting statute.

Criminal violations of section 5324(3) are prosecuted under 31 U.S.C. § 5322, which imposes criminal sanctions for "willful" violations of the statute. The Fifth Circuit, citing the Fifth Circuit Jury Instruction, explained that an act is done "willfully" if done voluntarily and intentionally, and with the specific intent to do something the law forbids; that is to say, with the bad purpose to disobey or to disregard the law. *See* Federal Jury Practice and Instructions, Civil and Criminal, § 14.06 (3rd ed.) (same). The court then decided that the "willful" requirement would be satisfied if Camarena acted with the bad purpose of circumventing the reporting requirements.

*Camarena's* reasoning is even more persuasive in the civil context, in which there is a lesser scienter requirement than in the criminal context because section 5322's "willful" standard is inapplicable. The relevant statutory language of sections 981 and 5324(3) refer only to the specific intent to circumvent the reporting requirements. *Cf. United States v. $359,500 in United*

*States Currency*, 828 F.2d 930, 934 (2d Cir.1987) ("government need not prove in a civil forfeiture action under 31 U.S.C. § 5317(c) that the person who allegedly failed to comply with the reporting requirement of § 5316(a) either had actual knowledge of, or intended "willfully" to violate, that requirement" as would be required for a criminal conviction). If Congress had intended otherwise, it could have used identical language in both the criminal and civil forfeiture provisions.

The precisely defined specific intent of the statute mandates a literal interpretation. Therefore, for purposes of civil forfeiture, this Court agrees with the Fifth Circuit that the government need only prove that claimants had knowledge of the reporting requirements and acted to avoid them.

■ On the basis of the proof now before the Court, the government has established probable cause to believe that the securities represent the proceeds of transactions that were "structured" to avoid reporting requirements, in violation of 31 U.S.C. § 5324(3).[6] The securities held by U.S. Trust in claimants' names are traceable to 46 transactions at 11 different domestic institutions in the McAllen, Texas area on 10 different business days. Indeed, claimants do not dispute that $323,000 in U.S. currency was broken down into amounts of less than $10,000. In light of the testimony given by the bank employees, there is probable cause that Efrain and Sergio Gonzalez knew that federal law required the reporting of transactions exceeding $10,000. That they dealt with eleven banks further supports a finding of probable cause; otherwise, the entire amounts could have been transacted with the one bank that had no "bank policy" similar to that of the Texas Commerce Bank. Thus, summary judgment is granted as to this part of the government's motion.

■ Once the government establishes probable cause, the burden of proof shifts to claimants to show by a preponderance of the evidence that the factual predicates for forfeiture have not been met. *See Banco Cafetero Panama*, 797 F.2d at 1160; *United States v. All Right, Title, Interest in Property Known as 303 West 116th Street*, 710 F.Supp. 502, 505 (S.D.N.Y. 1989). A "remote possibility" that the forfeited property is not traceable to a transaction structured to avoid reporting requirements is insufficient to "vitiate a strong probability, and neither will it create a preponderance of the evidence against a far more reasonable conclusion." *United States v. $83,230 in United States Currency & $40 in Canadian Currency*, 682 F.2d 573, 577–78 (6th Cir.1982). However, where claimants, as here, have established uncertainty as to the basis of one of the required elements, namely the specific intent, summary judgment is improper.

■ Although Rene and Carmen Gonzalez had conducted previous transactions in which the bank filed CTRs, there is doubt as to whether Efrain or Sergio Gonzalez knew that it was federal law that required the reporting. In light of Efrain and Sergio Gonzalez' assertions that they are solely-Spanish-speaking Mexican citizens of limited education, who are unfamiliar with American laws, and that no explanation of the CTR was given by any bank employee, it is possible that Efrain and Sergio Gonzalez, both of whom had purchased and endorsed cashier's checks, believed the reporting requirements to be a bank policy and not federal law. Additionally, claimants filed alien exemption forms notifying the United States government of the transaction with the stockbroker. Therefore, the existence of a material issue of fact regarding the predicates for forfeiture precludes summary judgment. While there is probable cause that claimants knew of the federal reporting requirements, the evidence needed to overcome the government's showing is not so "one-sided that

---

**6.** Claimants contend that the judge's finding of "no evidence" of actual knowledge of the anti-structuring statute precludes even a finding of prima facie evidence that the transaction was in violation of the § 5324(3). This reliance is again misplaced because that finding is limited to the criminal case and has no effect upon this Court.

one party must prevail as a matter of law." *See Anderson*, 477 U.S. at 251–52, 106 S.Ct. at 2512.

█ The government correctly maintains that knowledge or awareness of the reporting requirements need not be proven by direct evidence in a criminal prosecution, but may be established through inference from circumstantial evidence, such as participation in a structuring scheme, the elaborate nature of which serves no useful purpose other than that of evading federal reporting requirements. *See United States v. Nersesian*, 824 F.2d 1294, 1314 (2d Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 357, 98 L.Ed.2d 382 (1987). Nonetheless, summary judgment is inappropriate where claimants offer a legitimate, albeit unlikely, explanation for not wanting their transactions reported. That claimants did not want the Mexican government to discover their assets within the United States may have been the motivating force behind the structurings, thereby negating the inference that the structuring was intended to defeat reporting requirements.

█ Claimants may alternatively defeat the forfeiture claim by establishing that they are "innocent owners" within the meaning of 18 U.S.C. § 981(a)(2). Claimants argue that "innocent owner" refers to lack of knowledge of the transactions' illegality. The government contends that "innocent owner" refers to lack of knowledge of the illegal transactions.[7] Insofar as actual knowledge of the anti-structuring statute is not a required element for purposes of civil forfeiture, the Court agrees with the government. To hold otherwise would distort the anti-structuring statute as discussed earlier. Invocation of this defense requires claimants to prove that the structurings occurred without their knowledge or consent.

Yet, claimants argue that because the government failed to present evidence that they were involved in any illegality, § 981 is not directed against them. Clearly, this is not so. The Supreme Court has expressed that an owner's innocence, that is

to say, his or her lack of involvement in the illegal transaction, does not by itself prevent forfeiture. *Calero–Toledo*, 416 U.S. 663, 94 S.Ct. 2080. The Court implied that there are two situations in which forfeiture of an innocent owner's property may violate due process: (1) where an owner's property had been taken from him without his privity or consent; or (2) where an owner not only was uninvolved in and unaware of the wrongful activity, but also had done all that reasonably could be expected to prevent the proscribed use of his property. *Id.* at 689, 94 S.Ct. at 2094.

The statutory "innocent owner" defense was adopted after the judicial "innocent owner" defense. While both are aimed at owners whose property is used by another for an illegal purpose, the statutory defense lessened the heavy burden established by the Supreme Court's *Calero–Toledo* decision. It requires only a showing of ignorance of the illegal transactions. Indeed, claimants' notice of motion states that § 981(a)(2) provides that "there can be no forfeiture if the owner establishes that the *acts* complained of were committed without the knowledge of that owner" (emphasis added).

█ Where, as here, Efrain and Sergio Gonzalez actively engaged in the allegedly illegal transactions, they are not "innocent owners." Therefore, as to the structurings in which each admitted participation, neither Efrain nor Sergio Gonzalez may invoke the "innocent owner" defense. Accordingly, summary judgment is granted as to this part of the government's motion. However, as to Estella and Sandra Gonzalez, both of whom had neither purchased nor endorsed any of the cashier's checks, were not in the United States at the time of the structurings, and claim no knowledge that their shares of the monies had been split into several checks, there is a material issue of fact as to whether they may successfully invoke this defense.

### Conclusion

For the reasons discussed above, claimants' motion for summary judgment is de-

---

**7.** No Court has yet discussed the meaning of § 981(a)(2).

nied and the government's motion for summary judgment is granted as to (i) probable cause and (ii) Efrain and Sergio Gonzalez's preclusion of the "innocent owner" defense.

SO ORDERED.