UNITED STATES of America, Plaintiff,

v.

ALL FUNDS on DEPOSIT in GREAT EASTERN BANK ACCOUNT NUMBER 11008117 in the NAME of HADSON TOKO TRADING CO., a/k/a Hadson Toko Trading Co., Inc., a/k/a Hadson Toko Trading Co., Ltd., Defendants.

No. CV–91–1605(CBA).

United States District Court,
E.D. New York.

Aug. 28, 1992.

Arthur Hui, Asst. U.S. Atty., Andrew J. Maloney, U.S. Atty., for plaintiff.

Stuart Abrams, Sandor Frankel, Bender & Frankel, New York City, for defendants.

## MEMORANDUM AND ORDER

AMON, District Judge.

### Introduction

The United States commenced this action seeking forfeiture of the funds on deposit in account number 11008117 at the Great Eastern Bank ("Account" or "frozen account"), pursuant to 18 U.S.C. § 981. Claimant Hadson Toko Trading Co., Inc. ("Hadson") subsequently moved this Court, pursuant to Fed.R.Civ.P. 12(b)(6) and Rule 12 of the Local Rules of the United States District Court for the Southern and Eastern Districts of New York for Admiralty and Maritime Claims, for an order dismissing the forfeiture action and vacating the warrant for the arrest of the defendant properties. In addition, plaintiff has moved for leave to amend its complaint to add additional factual assertions and a claim under 31 U.S.C. § 5324. The motions were referred to the Honorable John L. Caden, United States Magistrate Judge, for report and recommendation. Magistrate Judge Caden filed his report and recommended that the motion to dismiss and the application to vacate the warrant be denied, and that the motion to amend be granted. After a de novo review of the record, *see* 28 U.S.C. § 636(b)(1), the Court adopts Magistrate Judge Caden's recommendation that the motion to amend be granted and the motion to dismiss be denied, but finds that claimant's motion to vacate the warrant should be granted in part.

### Background

On May 2, 1991, the government filed a civil complaint commencing this action for forfeiture of defendant monies pursuant to 18 U.S.C. § 981. The government also obtained a warrant pursuant to Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims for the seizure of the funds in the Account. The warrant was served upon the Great Eastern Bank ("Bank") on May 3, 1991. Service of the

complaint and warrant upon Hadson was made on May 31, 1991, and a claim was filed by Hadson on June 20, 1991, pursuant to Rule C(6) of the Supplemental Rules.

On May 2, 1991, the day this action was commenced, the frozen account had a balance of $6,340.00. On May 3, 1991, the day the account was seized, a deposit of a check in the amount of $6,079.00 was made into the account. On May 6, 1991, a deposit was made into the account in the amount of $48,384.77 for which the Bank filed a currency transaction report ("CTR"). A number of checks have since cleared the account bringing the current balance to $51,563.40.

The government alleges that between July 13, 1990 and December 26, 1990, 29 deposits of United States currency were made into the Account in amounts between $4,010.00 and $9,990.00 totaling $265,838.00. The government alleges as its first claim for relief that these deposits were structured to avoid the filing of currency transaction reports by the Great Eastern Bank in violation of 31 U.S.C. § 5313. This allegation is repeated, evidently erroneously, as the government's second cause of action. In its amended complaint the government seeks to expand the time period during which the structured transactions allegedly took place to cover over 80 deposits amounting to over $900,000.00 in cash. In addition, the government seeks to assert a second claim under 31 U.S.C. § 5324, the anti-structuring provision. The govern-

**1.** 31 *U.S.C.* § *5313 provides, in pertinent parts:*

(a) When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coin or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution and any other participant the Secretary may prescribe shall file a report on the transaction at the time and in the way the Secretary prescribes.

Under 31 C.F.R. § 103.22 a financial institution must file a CTR for any transaction involving currency of more than $10,000.00.

**2.** 31 U.S.C. § 5324 provides, in pertinent parts, that:

No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

ment contends that all monies in the frozen account are subject to forfeiture under 18 U.S.C. § 981, as property involved in violations or attempted violations of 31 U.S.C. §§ 5313 and 5324. Claimant argues that the funds currently on deposit are not subject to forfeiture since they were not involved in, nor traceable to, violations of Sections 5313 and 5324.

### Discussion

A motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure should be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Green v. Maraio,* 722 F.2d 1013, 1015–16 (2d Cir.1983) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). The court must accept as true all material facts well-pleaded in the complaint and must make all reasonable inferences in the light most favorable to the plaintiff. *In re Energy Sys. Equip. Leasing Sec. Litig.,* 642 F.Supp. 718, 723 (E.D.N.Y.1986).

In this case, the United States seeks forfeiture of the defendant funds pursuant to 18 U.S.C. § 981(a)(1), which authorizes forfeiture of property "involved in a transaction or attempted transaction in violation of sections 5313(a)[1] or 5321[2] of Title 31 ... or any property traceable to such property."

(1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);

\*    \*    \*    \*    \*    \*

(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

Structuring, also known as "smurfing", involves engaging in a series of cash transactions, each under the reporting ceiling of $10,000.00, at different banks on the same or different days or at the same bank on different days, for the purpose of moving a large aggregate of funds through financial institutions while avoiding the currency reporting requirements. *See The Drug Money Seizure Act & the Bank Secrecy Act Amendments: Hearings before Senate Committee on Banking, Housing and Urban Affairs,* 99th Cong., 2d Sess. (1989).

In response to this motion the government is only required to demonstrate probable cause for forfeiture, a claimant is not entitled to a hearing on this issue before trial. *See United States v. Banco Cafetero Panama,* 797 F.2d 1154, 1160 (2d Cir. 1986) (involving forfeiture action under 21 U.S.C. § 881, a forfeiture provision dealing with property connected to illegal drug transactions); *United States v. 316 Units of Municipal Securities in the Name of Efrain Gonzalez,* 725 F.Supp. 172 (S.D.N.Y.1989) (applying probable cause requirement to forfeiture under 18 U.S.C. § 981). In order to establish probable cause the government must have reasonable grounds, rising above mere suspicion, to believe the property is subject to forfeiture. *Banco Cafetero Panama,* 797 F.2d at 1160. At trial the government need only prove that the claimants had knowledge of the reporting requirements of Section 5313 and acted to avoid them. *316 Units of Municipal Securities,* 725 F.Supp. at 177.

As the Report and Recommendation of Magistrate Judge Caden correctly notes, the government has established probable cause to believe that deposits made into the frozen account were structured in violation of 31 U.S.C. §§ 5313 and 5324. *See United States v. Nersesian,* 824 F.2d 1294, 1314 (2d Cir.1987). Indeed, claimant is willing to concede, for purposes of this motion, that structuring violations took place. The government, however, must still establish that all the seized property was involved in a

transaction or attempted transaction in violation of Section 5324. *316 Units of Municipal Securities,* 725 F.Supp. at 179. The government has not demonstrated any nexus between the alleged violations and the entirety of the funds currently on deposit in the frozen account, *see United States v. Property at 4492 S. Livonia Rd.,* 889 F.2d 1258, 1269 (2d Cir.1989), nor has the government sought to trace the funds to the proceeds of illegal activity, *see Banco Cafetero Panama,* 797 F.2d at 1159.[3] Rather, the government argues that the entire current balance of $51,563.40 is forfeitable under a facilitation theory.

Courts have applied a facilitation theory to authorize the forfeiture, pursuant to Section 981, of the contents of entire bank accounts used to facilitate instances of money laundering in violation of 18 U.S.C. §§ 1956[4] and 1957. *See United States v. Certain Funds on Deposit in Account No. 01–0–71417, located at the Bank of New York,* 769 F.Supp. 80 (E.D.N.Y.1991); *United States v. All Monies ($477,048.62) in Account No. 90–3617–3,* 754 F.Supp. 1467, 1473 (D.Hawaii 1991). These courts held that facilitation occurs when the subject property makes the underlying criminal activity "less difficult or 'more or less free from hinderance'". *Bank of New York,* 769 F.Supp. at 84 (quoting *United States v. Schifferli,* 895 F.2d 987, 990 (4th Cir.1990); *United States v. Premises known as 3639–2nd St.,* 869 F.2d 1093, 1096 (8th Cir.1989)). If any portion of the

---

**3.** As the magistrate judge noted, under *Banco Cafetero Panama* funds in a tainted account are considered traceable to illegal funds based upon a lowest-intermediate balance rule. Under that theory, funds in a seized account would be considered traceable so long as the account balance never falls below the sum of the tainted monies deposited therein. 797 F.2d at 1159. If this method, originally used to trace the proceeds of illegal drug transactions, was applied in this instance the government would be limited to the seizure of $6,340, the amount on deposit at the time of seizure.

The magistrate judge suggested that use of this method is now suspect in light of proposed amendments to the forfeiture provisions. Despite Congressional criticism, however, no amendments have as of yet been signed into law, and *Banco Cafetero Panama* remains good law in the Second Circuit.

**4.** 18 U.S.C. § 1956(a)(1) (1992 Supp.) provides in pertinent part that:

Whoever, knowing that the property involved in a financial transaction represents the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity—

\* \* \* \* \* \*

(B) knowing that the transaction is designed in whole or in part—

(i) to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity; or

(ii) to avoid a transaction reporting requirement under State or Federal law,

... [shall be guilty of a crime] .

property is used to facilitate the violation, then all the property is forfeitable. *Bank of New York,* 769 F.Supp. at 84; *All Monies ($477,048.62),* 754 F.Supp. at 1473. Where violations of 18 U.S.C. §§ 1956 and 1957 are alleged this facilitation theory is completely logical. When money from illegal sources is commingled with "clean" money, the illegal funds are cleansed and sheltered from detection. A common method of money laundering is the mixing of legitimate and illegitimate money. The clean funds are used to remove the taint of the money derived from illegal sources. *Bank of New York,* 769 F.Supp. at 84–85. Accordingly, the legitimate funds are subject to forfeiture since they facilitate the concealment of the proceeds of the unlawful activity. In the instant case there is no claim of tainted money. Although the funds on deposit prior to seizure may have been deposited in violation of the reporting requirements, the government concedes they have no information that the funds were illegally obtained.[5] No violations of Section 1956 are alleged. Hence, this is not a case where the large cash deposit serves to mask the source of earlier deposited illegal funds.

Nonetheless, the government argues that the facilitation theory can be extended to violations of the reporting requirements. The government contends that in prohibiting structuring, Congress was simply eliminating a loophole used by money launderers to subvert the reporting requirements and accordingly the facilitation theory was properly applied in the circumstances presented here. *See Comprehensive Money Laundering Prevention Act: House Report from the Comm. on Banking, Finance & Urban Affairs,* H.Rep. No. 746, 99th Cong., 2d Sess. 21 (1986). This Court disagrees. The seizure of the funds currently in the subject account cannot be justified on a facilitation theory. The cases relied upon by the government, *Bank of New York,* 769 F.Supp. 80 and *All Monies ($477,048.62),* 754 F.Supp. 1467, involved allegations of violations of Section 1956, i.e., concealing the proceeds of unlawful activity, not simple structuring of transactions to avoid reporting requirements. Although the Court agrees that the prohibition on structuring was enacted to inhibit money laundering, this case involves bare claims of structuring, not the concealment of the proceeds of illegal activity. The Court has difficulty understanding how the deposit of large sums of money for which a CTR must be filed facilitates structuring and the avoidance of reporting requirements. The purpose of structuring is to hide large sums of cash by engaging in repeated small transactions which need not be reported to the Internal Revenue Service. In this case, the disputed funds consist mainly of a single deposit of $48,384.77 for which a CTR was filed by Great Eastern Bank with the notation "Suspicious Transaction" checked off by the Bank. The government argues that by occasionally depositing large sums of currency and causing a CTR to be filed, the claimant deflects attention from the structured transactions. This makes no sense. In this instance, the deposit of the large sum of money resulted in the filing of a CTR with a notation of "Suspicious Transaction". Causing the filing of a CTR hardly serves to hide the structured transactions. If anything, it subjects the account to closer scrutiny and make it more likely that the government would investigate this "suspicious" account and discover the numerous transactions involving sums just below the reporting requirements.

Moreover, the government's argument is contradicted by its position at oral argument. In response to questioning by the Court, the government stated that if funds deposited came from legitimate sources the money would not be subject to forfeiture. T. at 13, 19–21. The problem is that the

---

5. At oral argument the government stated that it could not demonstrate that the unreported transactions involved money obtained from illegal sources or activities, but it hoped discovery would produce evidence of such sources or activities. Transcript of Oral Argument at 11 (hereinafter "T. at"). The government, as it acknowledged, T. at 12, cannot seize funds on the hope that discovery will produce evidence of illegal activity. Such a seizure would rest upon mere conjecture, not probable cause.

government has no probable cause to believe that the money deposited on May 3rd or 6th came from illegitimate sources. The funds were not part of a structuring transaction nor did they facilitate such a transaction. Although the government's burden is minimal, it is not a mere formality, probable cause must be shown.

The government further argues that the account itself is subject to seizure under Section 981, and therefore any money in the account is also subject to seizure. There are a number of difficulties with this argument. First, the government cites no persuasive authority for this broad proposition. Second, in contradiction to this position, the government conceded at oral argument that legitimate funds deposited in the account after seizure are not subject to forfeiture.

In sum, the government is unable to demonstrate probable cause to believe that the $54,463.77 deposited into the Account on May 3rd and May 6th,[6] was property involved in a transaction or attempted transaction in violation of 31 U.S.C. § 5313 or 31 U.S.C. § 5324[7], or that it facilitated such violations. Accordingly, the government can only demonstrate probable cause as to the $6,340.00 present in the account on May 3, 1992. *See* infra at n. 3; *see also Banco Cafetero Panama*, 797 F.2d at 1160. Thus, the government may properly seize only that amount from the account and the remaining $45,223.40 must be released.

As to the government's motion to amend its complaint, the Court adopts the findings of the magistrate judge and grants leave to amend consistent with the discussion above.

### Conclusion

For the reasons stated above, claimant Hadson's motion to dismiss is denied, and its motion to vacate the warrant of arrest is granted except as to the amount of $6,340.00. The Government's motion for leave to amend is granted. The Clerk shall enter judgment accordingly.

SO ORDERED.

---

6. The May 3, 1991, deposit consisted of a single check for $6,097. As a CTR is not required for deposits made by check, there is no claim that the deposit by check on May 3, 1991 was part of a structuring scheme and no legitimate argument that it facilitated such a scheme.

7. The Court notes that although there is some question as to whether after-acquired property is subject to seizure under the original warrant, *see Reibor Int'l Ltd. v. Cargo Carriers (KACZ–Co.) Ltd.*, 759 F.2d 262 (2d Cir.1985), any infirmity was cured by the reissuance of the arrest warrant after the post-seizure deposits had been made.