**UNITED STATES of America, Plaintiff,**

v.

**UNITED STATES CURRENCY IN THE AMOUNT OF TWENTY THREE THOUSAND FOUR HUNDRED EIGHTY ONE DOLLARS, ($23,481), MORE OR LESS, Defendant.**

No. 89–CV–2642.

United States District Court, E.D. New York.

June 29, 1990.

---

Andrew J. Maloney, U.S. Atty., E.D. N.Y., Brooklyn, N.Y., for plaintiff; Michelle Ritholz, Asst. U.S. Atty., of counsel.

Jane Michaelson, Baltimore, Md., for defendant.

## MEMORANDUM–DECISION AND ORDER

BARTELS, District Judge.

In this *in rem* forfeiture action arising under 31 U.S.C. §§ 5316 and 5317, the United States has moved, and intervenor-claimants of the defendant currency have cross-moved, for summary judgment under Fed.R.Civ.P. 56. In addition, the claimants have moved for a change of venue under 28 U.S.C. § 1404(a) claiming forum non conveniens, and for dismissal of the action for lack of *in rem* jurisdiction under Fed.R. Civ.P. 12(b)(2).

### *Facts*

On November 9, 1988, at John F. Kennedy International Airport ("JFK") in Queens, New York, Joseph A. Ojo was an outbound passenger boarding Nigerian Airlines Flight 851 *en route* to Nigeria. Before boarding the flight, Ojo was asked to fill out a customs form in which he was required to report, pursuant to 31 U.S.C. § 5316, whether he was transporting monetary instruments in excess of $10,000. Ojo declared only $4,000. Due to Ojo's nervous manner and bulky appearance, the customs official conducted a search of Ojo and found he was carrying the defendant currency in the amount of $23,481. Ojo was arrested, and the defendant currency was seized at JFK and transferred by U.S. Customs officials to United States Customs Service office in Manhattan.

Ojo subsequently plead guilty before Chief Judge Platt to violating 31 U.S.C. §§ 5316 and 5322, was sentenced to three years probation, and was fined $25,050.

On August 10, 1989, the United States as Plaintiff filed a Verified Complaint *In Rem*

against the money that was seized from Ojo at JFK—i.e., the defendant United States Currency in the amount of $23,481— to condemn and forfeit the use of the currency in accordance with 31 U.S.C. §§ 5316 and 5317.[1] On the same day, a Warrant for Arrest for Article *In Rem* was issued to the Marshal of the Eastern District of New York. On October 2, 1989, in Manhattan, the currency was formally arrested pursuant to the warrant, and it remains stored in a bank account maintained by the U.S. Customs Service in the Southern District of New York. Nine persons, including Ojo, have intervened in the present case, claiming that various portions of the defendant currency belong to them. The claimants all live in or near Maryland.

The Plaintiff argues that it is entitled to summary judgment because the undisputed facts show that Ojo was attempting to transfer the defendant United States currency from the United States to a place outside the United States without completing the requisite currency reporting form in violation of 31 U.S.C. § 5316, thus entitling the Plaintiff to the forfeiture of the defendant currency as a matter of law under 31 U.S.C. § 5317.

On the other hand, the eight claimants other than Ojo have submitted affidavits stating that they individually gave various sums of money to Ojo to transport to their families in Nigeria. The claimants argue that this Court lacks jurisdiction because jurisdiction was destroyed when the currency was transferred from the Eastern District to the Southern District; that, for the convenience of the claimants, a change of venue to the District of Maryland would be proper; and that, since Ojo was not acting within the scope of his authority when he violated § 5316, they are entitled to summary judgment as a matter of law.

*Discussion*

I.

United States district courts are court of limited jurisdiction whose authority to hear a case must be based upon both a constitutional grant and congressional authorization. 4 Wright & Miller, *Federal Practice & Procedure,* § 1063 at 226 (1987). Therefore, before turning to the forfeiture claims, the question of jurisdiction must be addressed.

This Court has subject matter jurisdiction over this forfeiture action pursuant to 28 U.S.C. § 1345, which grants the district courts exclusive jurisdiction over all actions in which the United States is a plaintiff, and by 28 U.S.C. § 1355, which provides that the District Court shall have original exclusive jurisdiction of all actions or proceedings for forfeitures under any Act of Congress. 28 U.S.C. § 1345 (1988); 28 U.S.C. § 1355 (1988); *United States v. One Parcel of Real Property with Improvements Thereon, Known as 5708 Beacon Drive, Austin, Texas, Situated In Travis County, Texas,* 712 F.Supp. 525, 526 (S.D. Miss.1988).

■ However, a grant of authority by Congress over a particular subject matter or type of action is not enough for a court to exercise jurisdiction over a particular controversy. More is necessary. A federal court must also have jurisdiction over the defendant's person, his property, or the *res* that is the subject of the suit. Wright & Miller at 224. *See, e.g., Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985); *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980); *Shaffer v. Heitner,* 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977); *International*

---

**1.** 31 U.S.C. § 5316 provides in pertinent part: "[A] person or an agent or bailee of the person shall file a report under ... this section when the person, agent, or bailee knowingly ... transports, is about to transport, or has transported, monetary instruments of more than $10,000 at one time ... from a place in the United States to or through a place outside the United States." 31 U.S.C. § 5316(a)(1)(A) (1988).

31 U.S.C. § 5317 provides in pertinent part: "If a report required under section 5316 with respect to any monetary instrument is not filed (or if filed, contains a material omission or misstatement of fact), the instrument and any interest in property, including a deposit in a financial institution, traceable to such instrument may be seized and forfeited to the United States Government." 31 U.S.C. § 5317(c) (1988).

*Shoe v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Where the defendant is a *"res"* or thing, for the Court to exercise jurisdiction "the only essentials ... are presence of the *res* within its borders, its seizure at the commencement of the proceedings and the opportunity of the owner to be heard." *Pennington v. Fourth Nat'l Bank,* 243 U.S. 269, 272, 37 S.Ct. 282, 61 L.Ed. 713 (1917).

■ Thus, since *in rem* jurisdiction is predicated upon the presence of the *res* within the judicial district, *see* Beale, Harv. L.Rev. 107, 108 (1913), the question presented by the claimants is whether this Court's *in rem* jurisdiction was destroyed when the *res* was removed from this district after it was seized.[2] Since this is a case involving customs, in deciding whether jurisdiction exists in this forfeiture action, reference is to the applicable customs law. *United States of America v. One 1974 Cessna Model 310R Aircraft, Serial No. 310R0203, F.A.A. Registration No. N5083J,* 432 F.Supp. 364, 368 (D.S.C.1977).

In the present case the governing statute is 19 U.S.C. § 1605. Section 1605 provides:

> All vessels, vehicles, aircraft, *merchandise,* and baggage seized under the provisions of the customs laws ..., unless otherwise provided by law, shall be placed and remain in the custody of the appropriate customs officer for the district in which the seizure was made *to await disposition according to law.*
>
> Pending such disposition, the property shall be stored in such place as, in the custom officer's opinion, is most convenient and appropriate with due regard to the expense involved, *whether or not the place of storage is within the judicial district or the customs collection district in which it was seized; and the storage of the property outside the judicial district or customs collection district in which it was seized shall in no way affect the jurisdiction of the court which would otherwise have jurisdiction over such property.*

19 U.S.C. § 1605 (1988). Although the claimants argue that this statute specifically addresses "vessels, vehicles, merchandise and baggage" which would require special storage areas, and thus is not applicable in this case involving money, "merchandise" is defined as "goods, wares, and chattel of every description ... *and monetary instruments,"* 19 U.S.C. § 1401(c) (1988) (emphasis added)[3], and the phrase "monetary instruments" is further defined to include United States currency, 31 U.S.C. § 5312(a)(3)(A) (1988). Therefore, when the currency was transferred from the territory of the Eastern District of New York, the *in rem* jurisdiction of this Court was in no way affected since the currency was first seized in this district by United States customs officers and was thereafter removed to the territory of the Southern District of New York for storage.

■ The next question is the matter of venue and it is clear that under 28 U.S.C. § 1395(b), the venue for a civil proceeding for forfeiture of property is properly laid in the district where such property is "found." 28 U.S.C. § 1395(b) (1988). Since the currency was "found" in this district, the only district where venue is proper in this civil *in rem* forfeiture action against

2. It has been said that "if the jurisdiction is once exercised over a thing within the territory the subsequent removal of the thing out of the territory pending the litigation does not oust the court of jurisdiction." Beale, 27 Harv.L.Rev. at 108. In making this statement, however, Professor Beale cites cases where, unlike the present case, the *res* was removed from the judicial district inadvertently. *See The Rio Grande,* 90 U.S. (23 Wall.) 458, 465, 23 L.Ed. 158 (1874); *Wilson v. Graham,* 30 Fed.Cas. 125 (C.C. E.D.Pa.1821) (No. 17,804). Moreover, in this case the *res* was removed from the district after

seizure but before the jurisdiction of the court was formally exercised.

3. The claimants argue that the legislative history of this definitional statute shows that the intent in passing the statute was to aid in the enforcement of racketeering and drug trafficking and thus should not be applicable in this case where there is no indication of drug trafficking. However, where the plain meaning of the statute is apparent, as here, the Court will not delve into other possible interpretations through examining legislative history. *See Holtzman v. Schlesinger,* 484 F.2d 1307, 1314 (2d Cir.1973).

the United States currency is the Eastern District of New York. *See United States v. $358,613.00 United States Currency,* 703 F.Supp. 452, 454 (W.D.N.C.1989); 1A J. Moore, *Moore's Federal Practice* ¶ 0.345[6.–4] at 4401–02 (1989). Thus, a transfer of venue due to forum non conveniens would be inappropriate because venue is proper in no other district.

## II.

In this case, both parties move for summary judgment. Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate where "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R. Civ.P. 56(c). In a summary judgment motion, it is not the function of the Court to weigh the evidence presented and determine the truth of the matter, but, to determine whether there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■■■ Forfeiture statutes, which derive from English common law, generally provide that an owner's interest in the property may be forfeited even though the owner was not a participant in and had no knowledge of the illegal acts which brought about the forfeiture. *See, United States v. Stowell,* 133 U.S. 1, 13–14, 10 S.Ct. 244, 246, 33 L.Ed. 555 (1889); *Goldsmith–Grant Co. v. United States,* 254 U.S. 505, 511, 41 S.Ct. 189, 191, 65 L.Ed. 376 (1921); *Various Items of Personal Property v. United States,* 282 U.S. 577, 580–81, 51 S.Ct. 282, 283, 75 L.Ed. 558 (1931). Once the offense attaches to the *res* (here, the currency), it is without regard to the personal innocence of the owner because it is the *res* that is primarily considered the offender. *Goldsmith–Grant,* 254 U.S. at 511, 41 S.Ct. at 191.

There are, however, two exceptions to this general rule. The first was intimated in *Goldsmith–Grant* and then later confirmed in *Van Oster v. Kansas,* 272 U.S. 465, 467, 47 S.Ct. 133, 134, 71 L.Ed. 354 (1926). This exception, not applicable in the present case, exists where the object is stolen or taken from the owner without his consent. *Id.*

■■ A second exception was suggested in dicta by the Supreme Court in *Calero–Toledo v. Pearson Yacht Leasing Co.,* 416 U.S. 663, 94 S.Ct. 2080, 40 L.Ed.2d 452 (1974). There, the Court suggested that the property of an owner could not properly be forfeited where the owner

> proved not only that he was uninvolved in and unaware of the wrongful activity, but also that he had done all that reasonably could be expected to prevent the proscribed use of his property; for, in that circumstance, it would be difficult to conclude that forfeiture served legitimate purposes and was not unduly oppressive.

*Calero–Toledo,* 416 U.S. at 690–91, 94 S.Ct. at 2095. However, this suggested exception was adopted by the United States Court of Appeals for the Second Circuit in *United States v. One Tintoretto Painting,* 691 F.2d 603, 607 (2d Cir.1982). The *Tintoretto* court stated that the history of forfeiture "clearly demonstrates that its principal purpose was to protect government revenues, not to impose punishment without fault on those who are acting in good faith and without negligence". *Id.* (citation omitted).

■■ Recognizing the existence of the second exception in this circuit,[4] the next question is whether the claimants in this case have raised a sufficient issue of fact as to whether they fall within this exception. Even assuming the eight claimants other than Joseph Ojo were not aware of and were not involved with Mr. Ojo's failure to report moneys in excess of $10,000

---

4. Although this exception has not gained wide recognition, it has been accepted by the Second Circuit and thus must be applied in this case. *But see United States v. Twenty Thousand Seven Hundred Fifty–Seven Dollars and Eighty–Three Cents ($20,757.83) Canadian Currency,* 769 F.2d 479, 482 (8th Cir.1985); *United States v. $53,661.50 in United States Currency,* 613 F.Supp. 180, 185 (D.C.Fla.1985).

as required by 31 U.S.C. § 5316, their innocence is not enough. These eight claimants "must present evidence ... that [they] did all that reasonably could be expected to prevent this illegal act involving property [they] claim as [their] own." *Id.* (citation omitted).

 In support of their assertion that they meet this requirement, the claimants in their Memorandum of Law in opposition to plaintiff's motion for summary judgment, state that if afforded the chance they will testify that Ojo assured them that all precautions would be taken with the money, including conforming to customs regulations.[5] This unsworn statement alone, however, is not sufficient to raise a genuine issue of material fact. It is now well-settled that legal memoranda and oral argument are not evidence and "cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion where no dispute otherwise exists." *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (1978). *See also Transurface Carriers, Inc. v. Ford Motor Co.*, 738 F.2d 42, 46 (1st Cir.1984); *Watts v. United States*, 703 F.2d 346, 353 (9th Cir.1983). Therefore, as the claimants' affidavits fail to establish that they did all they could to prevent the illegal act in connection with their property, the Plaintiff's motion for summary judgment with respect to these eight claimants is granted.

 The claim against Joseph Ojo as to the money that Ojo claims as his own is also granted summarily. Ojo was convicted pursuant to 31 U.S.C. §§ 5316 and 5322, and he is therefore precluded from creating a factual issue as to his knowledge of the disclosure requirements in this civil action to forfeit the currency. *See United States v. Podell*, 572 F.2d 31 (2d Cir.1978); *United States v. $26,660 In United States Currency*, 777 F.2d 111 (2d Cir.1985). There is, therefore, no genuine issue of material fact with regard to Mr. Ojo's claim and the Plaintiff is entitled to summary judgment as a matter of law.

**5.** Memorandum of Law in Support of Claimants' Response to Plaintiff's Motion for Summa-

ry Judgment at 2.

*Conclusion*

In light of the foregoing, Plaintiff's motion for summary judgment under Fed.R. Civ.P. 56 is GRANTED, and claimants' cross-motions under 28 U.S.C. § 1404(a), Fed.R.Civ.P. 12(b)(2), and Fed.R.Civ.P. 56 are DENIED. The Clerk of the Court is directed to enter judgment for plaintiff.

SO ORDERED.