**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Robert F. WOLLMAN; Rosalie
Wollman, Claimants–
Appellants,**

and

**$149,275.66 U.S. Currency, Defendant.**

No. 90–6376.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1991.

Decided March 21, 1991.

As Amended Sept. 12, 1991.

---

Harry Levy, Schulman, Treem, Kaminkow & Gilden, P.A., Baltimore, Md., argued (Michael E. Kaminkow, on brief), for claimants-appellants.

James Richard Alsup, Asst. U.S. Atty., Baltimore, Md., argued (Breckinridge L. Willcox, U.S. Atty., Robert E. Sims, Asst. U.S. Atty., on brief), for plaintiff-appellee.

Before PHILLIPS and WILKINSON, Circuit Judges, and SMITH, State District Judge for the Eastern District of Virginia, sitting by designation.

PER CURIAM:

This is an appeal from the district court's grant of summary judgment to the government in a civil forfeiture proceeding against Robert and Rosalie Wollman. The court determined that as a matter of law on the summary judgment record the Wollmans intentionally had structured a series of currency deposits into their bank account at Maryland National Bank for the purpose of evading federal reporting requirements. Because we agree that there is no genuine issue of fact as to whether the Wollmans were aware of the reporting requirements, and whether they acted to evade them, and that the government was therefore entitled as a matter of law to summary judgment, we affirm.

I

Robert and Rosalie Wollman maintained a bank account at Maryland National Bank. Between January 10 and January 17, 1989, the couple made seventeen separate currency deposits totalling $160,000 into this account. Sixteen of these deposits were in the amount of $9500, and one was in the amount of $8000. These deposits occurred on four different days at five different branches of the bank. On three occasions, the Wollmans made two deposits at the same branch, one inside the bank and one at the drive through teller, within ten minutes of the other.

On January 12 and 17, 1989, Robert Wollman wrote three checks in the amount of $50,000 each against the Maryland National Bank account, depositing these checks into Certificate of Deposit (CD) accounts at three other banks. On February 14, 1989, the Internal Revenue Service seized the assets in the three CD accounts, claiming that they had been the subject of structured banking transactions designed to evade the requirement of 31 U.S.C. § 5313(a) and implementing regulations that banks report all cash transactions in amounts over $10,000. The government then filed its complaint for civil forfeiture of these funds, as authorized by 18 U.S.C. § 981(a)(1) (Supp.1990).[1]

Discovery followed and in their interrogatory answers, the Wollmans stated that on one occasion before January 1989, Robert

---

1. Under 31 U.S.C. § 5313(a) and implementing regulations, certain domestic financial institutions are required to file a Currency Transaction Report (CTR) each time they engage in a currency transaction in excess of $10,000. Section 5324(3) of Title 31 then provides:

No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

　(3) structure or assist in structuring, ... any transaction with one or more domestic financial institutions.

Therefore, property that is involved in, or traceable to, a structuring offense under § 5324 is forfeitable to the United States pursuant to 18 U.S.C. § 981(a)(1)(A).

attempted to make a currency deposit in excess of $10,000 and was then informed by a teller that the transaction would require paperwork to be filed with the Internal Revenue Service. The interrogatory answer further stated that the teller suggested that Robert reduce the cash deposit to an amount less than $10,000 for the purpose of avoiding the "inconvenience" of filing the I.R.S. forms.

The government moved for summary judgment, contending that the summary judgment materials demonstrated without factual dispute that the Wollmans knew of the reporting requirements and intentionally structured their deposits so as to avoid having the bank report them. The Wollmans responded only that the purpose in breaking up the deposits was not to frustrate the reporting requirements, but rather to avoid any possible entanglement with the I.R.S.[2] The district court initially denied summary judgment, concluding that a dispute existed as to the Wollmans' specific intent in structuring the deposits. The government then filed a motion for reconsideration, pointing to decisions which suggested that awareness of the structuring statute is irrelevant for the purpose of forfeiture. The government contended that forfeiture is appropriate whenever a claimant is aware of the reporting requirement and acts to evade it. After receiving this additional briefing, the court reconsidered its earlier decision and granted summary judgment for the government. This appeal followed.

## II

The first issue is whether any genuine dispute exists as to the Wollmans' knowledge of the federal reporting requirements. As indicated, 31 U.S.C. § 5313(a) and implementing regulations require banks to report to the IRS any currency transaction of $10,000 or more and 31 U.S.C. § 5324 makes it a crime to "structure or assist in structuring, any transaction" "for the pur-

pose of evading the reporting requirements of section 5313(a)."

The Wollmans need not have known that structuring itself was illegal; the only scienter required for a violation of § 5324(3) is that the violating party "had knowledge of the reporting requirements and acted to avoid them." *United States v. 316 Units of Municipal Securities in the Name of Efrain Gonzalez*, 725 F.Supp. 172, 179 (S.D.N.Y.1989); *accord United States v. Hoyland*, 914 F.2d 1125, 1128–29 (9th Cir.1990); *United States v. Scanio*, 900 F.2d 485, 489–91 (2d Cir.1990) (both involving criminal forfeitures).

Although the Wollmans do not now concede knowledge of the reporting requirements nor intent to evade them, the district court was correct in granting summary judgment in favor of the government. First, once the government establishes probable cause for forfeiture (as indisputably it has done here), the burden shifts to the Wollmans to prove the currency at issue is not subject to forfeiture. *See* 19 U.S.C. § 1615 as incorporated by 18 U.S.C. § 981(d); *see also Boas v. Smith*, 786 F.2d 605, 609 (4th Cir.1986). Second, the Wollmans have offered no evidence suggesting that they did not know of the reporting requirement. They did not submit an affidavit to that effect, and their own interrogatory answers provide sufficient evidence of Robert's awareness of federal reporting regulations such that no reasonable person could conclude that the Wollmans lacked knowledge.

As indicated, the Wollmans concede that a bank teller previously informed Robert of the federal reporting requirements. But they contend that they believed the reporting requirements to be permissive, rather than mandatory. The district court rightly rejected this assertion, as do we. Given the convoluted course of their deposit transactions, it is inconceivable that they actually believed the reporting requirements to be of no more significance than they assert. Their interrogatory answer in

---

**2.** Specifically, the contention was that "recalling the teller's advice and paranoid about any notice to the Internal Revenue Service, ... Robert

decided to deposit the $160,000 via individual transactions, each less than $10,000."

fact put it that the teller told Robert that reporting to the I.R.S. was "necessary paperwork." Additionally, the Wollmans have conceded throughout that a motivating factor in their deposit transaction was to avoid entanglement with the IRS—a concession that implies perfect awareness that entanglement would assuredly have resulted had the deposits been for $10,000 or more.[3]

The Wollmans argue finally that, because they evaded the reporting requirements for innocuous reasons, they should not be held culpable for their behavior. The Wollmans suggest that they evaded reporting requirements for two reasons unrelated to the purpose of the criminal offense on which the forfeiture is based: convenience and a fear of entanglement with the I.R.S. They claim that these innocuous motives should excuse their efforts to avoid compliance with the law. This argument is wholly unavailing.

In support of it, the Wollmans point to the decision of the Southern District of New York, in *316 Units*. There the court stated that "summary judgment is inappropriate where claimants offer a legitimate, albeit unlikely, explanation for not wanting their transactions reported," 725 F.Supp. at 180. That is, a claimant need only raise a question as to whether he acted for some reason other than avoiding getting caught in criminal activity to avoid summary judgment in a forfeiture proceeding. Without accepting the legal premise of *316 Units*, we need only point out that its facts are distinguishable in critical respects. The *316 Units* court found that it was possible that the Spanish speaking claimants in that case did not know of or understand the reporting requirements, or believed that the bank—rather than the IRS—had a policy of reporting these transactions. Here, there is no question that the Wollmans knew of the reporting requirements and that they were imposed by the government, not the banks with which they dealt. Even if we were to accept the legal premise of the decision in *316 Units*, we would therefore find it inapplicable here.[4]

For the foregoing reasons, we affirm the grant of summary judgment for the government.

AFFIRMED.

---

**3.** It is relevant to the issue of the Wollmans' purpose to evade "entanglement" that Robert Wollman earlier had been convicted of tax evasion.

**4.** The government correctly points out that the Wollman construction of *316 Units* would confuse motive for evasion, which is irrelevant, with intent to evade, which is all that counts.