UNITED STATES of America, Plaintiff,

v.

$200,000, REPRESENTING the CONTENTS of a FIRST PENN–PACIFIC LIFE INSURANCE COMPANY ANNUITY ACCOUNT, Defendant.

No. 91 C 7268.

United States District Court,
N.D. Illinois, E.D.

Oct. 8, 1992.

Jonathan C. Haile, U.S. Attorney's Office, Chicago, Ill., for U.S.

Vito M. Evola, Chicago, Ill., for Richard and Shirley Skarup.

## MEMORANDUM AND ORDER

MORAN, Chief Judge.

Plaintiff United States brings this forfeiture action against the defendant currency. Before us now is claimants' motion to change venue and plaintiff's motion for judgment on the pleadings or, in the alternative, summary judgment. For the reasons below, we deny claimants' motion to change venue and we deny plaintiff's motion for summary judgment.[1]

---

1. Rule 12(c) of the Federal Rules of Civil Procedure provides:

 If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....

We will treat plaintiff's motion as one for summary judgment, although we note that our disposition would be the same under either approach.

## BACKGROUND [2]

This is a forfeiture action brought against defendant currency in the amount of $200,000 ("$200,000"), representing the contents of a life insurance annuity contract. The claimants are Richard and Shirley Skarup ("Skarups"). They are residents of Arizona. The $200,000 is within the jurisdiction of this court and was seized within the Northern District of Illinois. Having been instilled with a "deep distrust of banking institutions," the Skarups over the course of their marriage had kept large amounts of currency at their residence.

In late 1988, the claimants, apparently wanting to buy a house, found out they would not be permitted to make such a purchase in cash. When Shirley Skarup went to several Arizona banks with cash trying to obtain cashier's checks, she apparently found that banks had varying policies for issuing cashier's checks.[3] The Skarups purchased a residence in Scottsdale, Arizona, with a down payment of $20,000, in part composed of two cashier's checks for amounts under $10,000. The remaining balance was paid with approximately 36 cashier's checks in amounts under $10,000. All of these checks were purchased within a ten-day period.

Soon after closing on the purchase of this house, the Skarups put the house back on the market and eventually sold it. The claimants received approximately $241,-000.00 as net proceeds of the sale. With these proceeds, claimants purchased three certificates of deposit (CDs) at Valley National Bank. Two of these CDs were for $100,000 each. On or about March 7, 1991, the proceeds of these two CDs were transferred to a First Penn–Pacific Life Insurance Company account at the Valley National Bank. Later, the funds were transferred into an annuity account at First Penn–Pacific in the names of Richard and Shirley Skarup.

Some time after the purchase and sale of the residence in Scottsdale, some of the currency that the Skarups kept in their home became water damaged. Shirley Skarup exchanged some of this currency at a bank.[4]

The funds from the $200,000 annuity were seized on April 15, 1991, pursuant to a seizure warrant issued by the United States District Court for the Northern District of Illinois.[5]

---

**2.** A grant of summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Renovitch v. Kaufman,* 905 F.2d 1040, 1044 (7th Cir.1990). The movant has the burden of demonstrating a lack of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). In making this determination, we examine the "pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits," resolving all doubts in favor of the non-movant. Fed. R.Civ.P. 56(c). For that purpose we are "not required to draw every conceivable inference from the record—only those inferences that are reasonable," in favor of the non-movant. *Bank Leumi Le–Israel, B.M. v. Lee,* 928 F.2d 232, 236 (7th Cir.1991). The facts recited reflect the above standard.

**3.** According to the affidavit of Shirley Skarup: Some banks would not write cashier's checks for non-customers in amounts in excess of Two Thousand Dollars ($2,000.00). Still other banks would write cashier's checks for cash but not in excess of Ten Thousand Dollars ($10,000.00) because of what they said was "the extensive paperwork involved." The teller at the first bank would not write me a cashier's check for Twenty Thousand Dollars ($20,000.00) as I requested. The teller stated that because of the amount of paperwork involved, I could only purchase one (1) cashier's check for under Ten Thousand Dollars ($10,-000.00).
S. Skarup aff. ¶ 6.

**4.** According to plaintiff's verified complaint, on August 30, 1989 Shirley Skarup brought $10,850 of damaged currency to Valley National Bank for deposit. Allegedly, she expressed concern about whether a currency transaction report would need to be filed with the IRS. It was apparently this transaction which led to the investigation of the circumstances surrounding the earlier house purchase. We note that the transactions at issue in this forfeiture proceeding all occurred *prior* to any such August 30 transaction at Valley National Bank.

**5.** Plaintiff also includes an allegation (which claimants admit) that claimants' son died of an apparent cocaine overdose on July 2, 1988. The only apparent reason to have included this allegation was to suggest that the money involved in the transactions at issue came from some illegitimate source, when in fact there is absolutely no evidence before the court to suggest that this is the case.

## DISCUSSION

Plaintiff claims that the seized currency is forfeitable to the United States under subsections (a)(1)(A) and (b)(2) of 18 U.S.C. § 981 (section 981). Under section 981, property involved in violations of 31 U.S.C. §§ 5313(a) and 5324 is forfeitable to the United States. Under these sections and the relevant regulations, financial institutions are required to file reports for transactions involving $10,000 or more in currency. It is also a violation to structure or attempt to structure transactions for the purpose of evading these reporting requirements. Claimants seek to transfer venue and deny that forfeiture is appropriate.

## I. VENUE

■ The Skarups point out that they and most of the witnesses are from the District of Arizona. Also, the acts involved in the alleged structuring of the transaction occurred in Arizona. As a result, the Skarups have moved for a transfer of venue to the District of Arizona, pursuant to either the Supplemental Rules of Admiralty and Maritime Claims or the provisions of 28 U.S.C. § 1404(b). Plaintiff responds simply that venue is proper here under 28 U.S.C. § 1395(b). We agree with plaintiff and therefore deny claimants' motion to transfer venue.

28 U.S.C. § 1395(b) provides that a "civil proceeding for the forfeiture of property may be prosecuted in any district where such property is found." It is undisputed that the property, $200,000, was "found" and remains in the Northern District of Illinois. Without doubt, under section 1395(b), this district is a proper one for this proceeding. In fact, it is likely the *only* proper district. *See United States v. United States Currency in Amount of $23,-481.00*, 740 F.Supp. 950, 953–54 (E.D.N.Y. 1990) ("Since the currency was 'found' in this district, the only district where venue is proper in this civil *in rem* forfeiture action against the United States currency is the Eastern District of New York.").

Claimants cite to section 981(b)(2) in order to convince us to look to the venue provision of the Supplemental Rules for certain Admiralty and Maritime Claims (Supplemental Rules).[6] Claimants argue that because the issuance of process is governed by the Supplemental Rules, that we may also consider the venue provisions of those rules. Claimants cite no case law to support their approach to venue, nor do claimants convince us that section 981(b)(2) is relevant to our inquiry.

■ Next, claimants rely on 28 U.S.C. § 1404(b) for transfer of venue.[7] Claimants conveniently quote only the second sentence of this section in their briefs. A reading of both sentences, however, makes clear that a transfer from the Northern District of Illinois to the District of Arizona is not contemplated under section 1404(b). Because venue is proper under 28 U.S.C. § 1395(b), we deny claimants' motion to transfer venue to the District of Arizona.[8]

---

6. 18 U.S.C. § 981(b)(2) provides:
 Property shall be seized under paragraph (1) of this subsection upon process issued pursuant to the Supplemental Rules for certain Admiralty and Maritime Claims by any district court of the United States having jurisdiction over the property...."

7. Section 1404(b) provides that:
 [u]pon motion, consent or stipulation of all parties, any action, suit or proceeding of a civil nature or any motion or hearing thereof, may be transferred, in the discretion of the court, *from the division in which pending to any other division in the same district.* Transfer of proceedings in rem brought by or on behalf of the United States may be transferred *under this section* without the consent of the United States where all other parties request transfer.

28 U.S.C. § 1404(b) (emphasis added).

8. Claimants have not argued that a transfer of venue is appropriate under 28 U.S.C. § 1404(a). Under this section, "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). In any event, noting the permissive language ("may transfer") and the fact that claimants have not convinced us that there is any other district where this action might have been brought, we decline to transfer venue under section 1404(a) as well. *See $23,481.00*, 740 F.Supp. at 954; *see also* 18 U.S.C. § 981(h) (providing venue in addition to that under section 1395(b) in cases where the claimant is also a defendant charged with a violation that is the basis for forfeiture).

## II. PLAINTIFF'S SUMMARY JUDGMENT MOTION

Plaintiff seeks summary judgment for forfeiture of the $200,000 pursuant to 18 U.S.C. § 981(a)(1)(A), for alleged violations of 31 U.S.C. §§ 5313(a) and 5324.[9]

### A. *Probable Cause for Forfeiture*

 Claimants maintain that plaintiff has failed to show probable cause for forfeiture and thus the case should be dismissed. The government's basis for seeking forfeiture is that the defendant property was procured as a result of claimants obtaining cashier's checks from financial institutions with the intent to evade the reporting requirements. As claimants argue, it is the government's burden to show both the prohibited conduct and the requisite intent in determining probable cause. Then, once probable cause is shown, the burden shifts back to claimants to show that the factual predicates for forfeiture have not been met. *United States v. 316 Units of Municipal Secur.*, 725 F.Supp. 172, 177–79 (S.D.N.Y.1989).[10] However, plaintiff can succeed in establishing probable cause even though there may be a question of fact on the issue of intent which precludes summary judgment.

 In forfeiture cases, probable cause means "a reasonable ground for a belief of guilt, supported by less than prima facie proof but more than mere suspicion." *United States v. 15824 West 143rd Street,* 736 F.Supp. 882, 884 (N.D.Ill.1990) (citation omitted). Claimants argue that the affidavit of IRS agent Schwartz (which serves as the basis of the verified complaint) is not admissible evidence and not based at all on personal knowledge. Therefore, according to claimants, under *15824 West 143rd,* plaintiff's have failed to establish probable cause. However, in order to find probable cause, the affidavit need not be admissible evidence and could even be based on hearsay.[11] *See 15824 West 143rd,* 736 F.Supp. at 885; *see also United States v. Premises Known as 526 Liscum Drive,* 866 F.2d 213, 217 n. 3 (6th Cir.1989).

The damaging portions of the affidavit (at least from a probable cause standpoint) are admitted to by the claimants. Namely, claimants admit that they bought a house (ans. ¶ 8) with a $20,000 down payment and the balance with approximately 36 cashier's checks (ans. ¶ 10). Claimants admit that the checks were for less than $10,000 each. Thus, they do not deny that the reporting requirements were avoided, but rather seek to explain *why* the checks were obtained in such a manner (ans. ¶ 26). Thus, any infirmities in the papers of the plaintiff are cured by the undisputed facts. The circumstantial evidence and reasonable inferences from the undisputed facts show that there is a *reasonable ground* for a belief that claimants structured the transactions

---

**9.** Section 981 provides that any real or personal property involved in a transaction or attempted transaction in violation of sections 5313(a) or 5324 is subject to forfeiture to the United States.

Section 5324 is entitled "Structuring transactions to evade reporting requirement prohibited" and provides that:

No person shall for the purpose of evading the reporting requirements of section 5313(a) with respect to such transaction—

(1) cause or attempt to cause a domestic financial institution to fail to file a report required under section 5313(a);

(2) cause or attempt to cause a domestic financial institution to file a report required under section 5313(a) that contains a material omission or misstatement of fact; or

(3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions.

Section 5313(a) requires domestic financial institutions to file a report of certain transac-

tions according to regulations prescribed by the Secretary of the Treasury. 31 C.F.R. §§ 103.-22(a)(1), 103.27(4) require a financial institution to file a report for transactions for the payment, receipt or transfer of $10,000 or more in United States coin or currency.

**10.** *See* 18 U.S.C. § 981(d); *see also United States v. 15824 West 143rd,* 736 F.Supp. 882, 884 (N.D.Ill.1990) (Section 981(d) "incorporates by reference all the provisions of like forfeiture statutes in customs proceedings").

**11.** In response to claimants' objections, plaintiffs produced an affidavit of Agent Nielsen and copies of the checks apparently involved in the transactions at issue. Claimants argue that the affidavit of Nielsen was not notarized and thus should be stricken. Because this affidavit and the attachments do not affect our disposition of this motion, we do not address this issue.

with the intent to evade the reporting requirements.[12] *See 15824 West 143rd*, 736 F.Supp. at 886. Therefore, the government has made a sufficient showing to establish probable cause.

## B. *Intent*

The remaining issue to be decided is whether plaintiff has satisfactorily demonstrated a lack of a genuine issue of material fact as to the requisite intent under section 5324. For this purpose, we must analyze the meaning of "for the purpose of evading the reporting requirements" in section 5324.

Plaintiff admits that forfeiture is improper "unless claimants had the specific intent to avoid the filing of currency transaction reports." Pltf's reply at 3. Plaintiff maintains that the undisputed facts demonstrate that claimants were aware of the reporting requirements and acted to avoid them. Claimants deny this representation. Further, claimants argue that plaintiff has not demonstrated that claimants' violation was "willful," as, according to claimants, is required in this context. Finally, claimants raise as an affirmative defense that forfeiture of $200,000 in this situation would be a violation of the eighth amendment prohibition against excessive punishment.

■ Claimants argue initially that 31 U.S.C. § 5321(a)(4) prevents civil forfeiture here unless it has been demonstrated that they "willfully" violated section 5324. We note first that section 5324 does not contain a reference to willful behavior. In order to be convicted of a criminal anti-structuring violation under section 5322, however, a *willful* violation of section 5324 must be proved.

Section 5321(a)(4), governing civil penalties which may be assessed by the Secretary of the Treasury for violations of section 5324, does require a willful showing.[13] Section 5321(a)(4) was added in a 1986 amendment and applies to violations committed after the end of the three-month period beginning on October 27, 1986. *See* 31 U.S.C.A. § 5321 (stat. n. at 99–100 (Supp.1992)). This section was added at the same time and with the same effective date as section 5324 which prohibits structuring transactions in order to evade the reporting requirements.[14]

Claimants do not address the fact that a civil forfeiture under section 981 is a different thing from a civil penalty under section 5321, *see United States v. Rogers*, 962 F.2d 342, 344 (4th Cir.1992), and they make no argument concerning why we should import the willful standard of civil monetary penalties into civil forfeitures. We also note that some courts have not found a willful standard in connection with civil for-

---

**12.** As we address below, there is also an issue of what level of intent is required to be shown for forfeiture. In order to demonstrate probable cause, the government must show that there is a reasonable ground for a belief that claimants structured the transaction with the appropriate intent. Even assuming that the highest level of intent must be shown ultimately, we find, based on the undisputed facts, that such a reasonable ground exists.

**13.** 31 U.S.C. § 5321(a)(4) governs *civil* penalties for structured transaction violations and provides:

> The Secretary of the Treasury may impose a civil money penalty on any person who willfully violates any provision of section 5324.... The amount of any civil money penalty imposed ... shall not exceed the amount of the coins and currency ... involved in the transaction with respect to which such penalty is imposed.

**14.** Section 5321(a)(4)(C) provides that any civil money penalty assessed is to be offset by "the amount of any forfeiture to the United States under section 5317(d) in connection with the transaction with respect to which such penalty is imposed." We note that the reference to section 5317 is likely an error, because it makes no sense in context. First, section 5317 governs forfeiture of monetary instruments due to noncompliance with section 5316, which is the section governing reporting requirements for *exporting and importing* monetary instruments. Thus, a penalty would not be imposed for a structuring violation under section 5316. Second, we can find no section 5317(d)—subsection (c) appears to be the last in the section. Lastly, the sensible offset to civil money penalties under section 5321(a)(4) would be those forfeitures under 18 U.S.C. § 981 (governing forfeitures for violations of section 5324 and also added at the same time and with the same effective date as section 5321(a)(4) and section 5324).

feitures.[15] Nevertheless, we believe it makes little sense to have a willful requirement for imposing a civil penalty and not require at least the same degree of intent for the more severe penalty of forfeiture.[16] This conclusion fits easily with the statute because, though it does not use the word "willful," section 5324 does have a specific intent requirement. We find that the intent element of section 5324 requires the same showing as that required under 5321(a)(4).

Courts have disagreed on the meaning of the willful standard in various contexts. Claimants cite *Cheek v. United States*, 498 U.S. 192, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), as support for the proposition that a willful violation of the anti-structuring laws requires a showing that claimants had knowledge of the laws. *Cheek* was a criminal tax case in which the Supreme Court found that Congress' use of the word "willfully" in the criminal tax context required the government to prove that the defendant committed a "voluntary, intentional violation of a known legal duty." *Cheek*, 498 U.S. at ——, 111 S.Ct. at 609–10. The *Cheek* decision relied on Congress' intent in using the statutory term "willfully" in the criminal tax context to create an exception to the traditional rule that ignorance of the law is no excuse. *Id.* at ——, 111 S.Ct. at 609. At least one court has sought to apply the *Cheek* version of "willfully" in the criminal anti-structuring context. *See United States v. Aversa*, 762 F.Supp. 441 (D.N.H.1991) (specific intent to violate the law required).

Other courts have refused to apply the *Cheek* rationale to anti-structuring violations. *See Rogers*, 962 F.2d at 344 ("proof of a *willful* violation of § 5324(3), as set forth in § 5322(a)," does not require "the additional showing that a party knew that the structuring of the transactions was illegal."); *United States v. Brown*, 954 F.2d 1563, 1569 n. 2 (11th Cir.1992); *United*

*States v. Dashney*, 937 F.2d 532, 540 (10th Cir.), *cert. denied* —— U.S. ——, 112 S.Ct. 402, 116 L.Ed.2d 351 (1991). The *Dashney* court reasoned that the necessity for requiring knowledge of the law under certain statutes using "willfully" comes from the desire to prevent *innocent* people from violating a statute due to what is typically innocent behavior. *Dashney*, 937 F.2d at 539. With this purpose in mind, there is no reason to require knowledge for a violation of section 5324 because it already contains a scienter requirement; therefore, no "innocent" person could be caught by section 5324. *Id.* at 539.

The *Dashney* standard for willful behavior for criminal anti-structuring violations is, for all practical purposes, the same as the scienter requirement in cases of civil forfeiture where the willful standard is not explicitly applied. *See United States v. Wollman*, 945 F.2d 79, 81 (4th Cir.1991) ("the only scienter requirement for a violation of § 5324(3) is that the violating party 'had knowledge of the reporting requirements and acted to avoid them.'"); *316 Units*, 725 F.Supp. at 179 ("government need only prove that claimants had knowledge of the reporting requirements and acted to avoid them.").

■ In any event, we need not decide whether the appropriate standard requires knowledge of the anti-structuring provisions or just knowledge of the reporting requirements. Under either standard, we must deny plaintiff's motion for summary judgment. Claimants have established enough uncertainty as to the element of intent to make summary judgment improper. *Id.* at 179.

Claimants maintain that some banks had policies against issuing cashier's checks above certain amounts to non-customers and that other banks preferred not performing transactions in excess of $10,000 because of the "paperwork" involved. The best plaintiff can do is to argue that

---

**15.** In *316 Units*, 725 F.Supp. at 178–79, the court found that the willful standard of section 5322 was inapplicable to the civil context of sections 981 and 5324(3). However, this finding was apparently without consideration of the use of "willful" in section 5321.

**16.** For example, a claimant faced with a forfeiture will lose the entire property. Under section 5321(a)(4), the civil penalty can be *at most* the amount involved in the transaction. Also, any forfeited amount serves to reduce the civil penalty. Thus, the civil penalty is at most as severe as forfeiture and possibly less so.

"[c]laimants acknowledge in ¶ 26 of their answer that the purpose of structuring the transaction through 36 separate cashier's checks was to avoid the 'paperwork,' i.e. the currency transaction reports that are required for a cash transaction of $10,000." Pltf's reply at 3. We cannot grant summary judgment on an unsubstantiated characterization of the claimants' purported knowledge.[17] Resolving all doubts in favor of claimants, as we must, we assume that some banks had the policies and aversion to paperwork that claimants suggest. Plaintiff does nothing to rebut claimants' version of what they knew of the reporting requirements, except claim that claimants' story is highly unlikely. "While there is probable cause that claimants knew of the federal reporting requirements, the evidence needed to overcome the government's showing is not so 'one-sided that one party must prevail as a matter of law.'" *316 Units*, 725 F.Supp. at 179–80, *quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Therefore, we deny plaintiff's motion for summary judgment.[18]

## CONCLUSION

For the above reasons, we deny claimants' motion to transfer venue and we deny plaintiff's motion for summary judgment.

---

**17.** While we may have our doubts as to the likelihood of claimants succeeding on the merits, this is not a case like *Wollman*, where summary judgment was granted to the government in a civil forfeiture proceeding. There, it was the case that claimants "have offered no evidence suggesting that they did not know of the reporting requirement. They did not submit an affidavit to that effect, and their own interrogatory answers provide sufficient evidence of [claimant's] awareness of federal reporting regulations such that no reasonable person could conclude that the [claimants] lacked knowledge." *Wollman*, 945 F.2d at 81. Also, in *Wollman*, the bank teller told the claimant that it was "necessary paperwork." *Id.* at 82. The affidavits filed by the Skarups do deny knowledge of the reporting requirements. Further, there is no direct evidence that claimants knew of the reporting requirements, as there was in *Wollman*.

**18.** Because we have denied summary judgment, we are not required to address claimants' Eighth Amendment argument. However, we note that this argument is quite likely a loser. In light of Congress' decision to allow forfeiture, claimants have not overcome the presumption that Congress acted constitutionally. *See United States v. O'Banion*, 943 F.2d 1422, 1433 (5th Cir.1991); *United States v. One 107.9 Acre Parcel of Land*, 898 F.2d 396, 400 (3d Cir.1990); *see also United States v. On Leong Chinese Merchants Association Building*, 918 F.2d 1289, 1296 (7th Cir.1990), *cert. denied* — U.S. ——, 112 S.Ct. 52, 116 L.Ed.2d 29 (1991) ("courts uniformly have held that the Eighth Amendment does not apply to civil *in rem* actions, since they are remedial in nature and not punishments for crimes").