**UNITED STATES, Plaintiff,**

**v.**

**ONE 1991 CHEVROLET CORVETTE CONVERTIBLE, VIN 1G1YY3387M5114464, and One 1993 Jeep Cherokee, VIN 1J4GZ5854PC561229, Defendants.**

No. 95–2769.

United States District Court,
W.D. Tennessee,
Western Division.

March 17, 1997.

Christopher E. Cotton, U.S. Atty's Office, Federal Office Building, Memphis, TN, for U.S., Plaintiff.

Rita L. Stotts, Law Office of Rita L. Stotts, Memphis, TN, for Chevrolet Corvette Convertible 1991 VIN #1G1YY3387M5114464, Defendant.

Rita L. Stotts, Law Office of Rita L. Stotts, Memphis, TN, for George Bush, Claimant.

## ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

DONALD, District Judge.

The United States seeks summary judgment in its civil forfeiture action brought against two vehicles, a 1991 Corvette and a 1993 Jeep Cherokee, owned by the claimant and alleged to have been involved in or purchased with the proceeds of drug transactions.

The government's forfeiture action is based on an investigation by a Drug Enforcement Administration ("DEA") Task Force in Memphis that revealed that Claimant George Bush had purchased the Corvette for $19,500, furnished in the form of a $500 personal check and two cashier's checks from different banks obtained through a complex series of transactions. Mr. Bush's name did not appear on any of the checks used to purchase the car. One cashier's check, in the amount of $9,000, was purchased by an individual identified as Jo Harper, who according to the Task Force's investigation paid for it mostly in ten- and twenty-dollar bills. (Aff. of Bradley C. Wyatt ¶ 3c.) Another acquaintance of Mr. Bush's, identified as April Broom, purchased the second cashier's check, in the amount of $10,000, paying for it with $3,000 in cash and a $7,000 cashier's check made out to Ms. Broom and purchased by Mr. Bush, according to the task force's investigation. Ms. Broom also test drove the Corvette (Mr. Bush has no driver's license), signed the bill of sale ("Jacqueline P. Bush [by] April Broom"), furnished the $500 personal check and traded in a car registered in her name, according to the government. The claimant disputes the manner in which the cashier's checks were purchased, and in fact says the owner of the car lot required that cashier's checks be used in purchasing vehicles when more than $10,000 in cash was involved. (Aff. of George W. Bush ¶ 7.) However, claimant admits that he paid for the Corvette with two cashier's checks, one for $10,000 and one for $9,000, a personal check and a trade-in.

The jeep is registered in Tennessee to "James Bush" and was purchased by a man identified by the car salesman as the claimant. In that transaction, Mr. Bush paid more than $21,000 for the vehicle, all in cash, and asked the salesman not to fill out a Form 8300, a document that merchants must send to the Internal Revenue Service when they accept more than $10,000 in cash from a customer. Although he told Mr. Bush he would not submit the form, the salesman did send one in. Claimant disputes this account, as well as a claim by the government that he threatened the salesman for completing the reporting form. (Bush Aff. ¶¶ 9, 13.)

In addition to the large amounts of cash used to purchase the two vehicles, the government bases its forfeiture action on the fact that claimant was convicted at least three times and arrested eight other times

on narcotics charges and that he admitted in interrogatories in October 1996 that he has not held a "regular job" within the past five years. Mr. Bush claims he supports himself with proceeds from legal gambling and that he currently operates a business in a local mall. He denies having structured the purchase of his vehicles to avoid the IRS cash reporting requirement.

In a civil forfeiture action, the government bears the initial burden of showing probable cause. *United States v. $53,082.00 in U.S. Currency*, 985 F.2d 245, 250 (6th Cir.1993). This requires the government to establish a "reasonable ground for belief, supported by more than mere suspicion, that there is a substantial connection between the seized [property] and an illegal drug transaction." *United States v. $67,220.00 in U.S. Currency*, 957 F.2d 280, 284 (6th Cir.1992). In determining whether probable cause exists to forfeit property, the court "must examine the entire record, including evidence developed after the seizure...." *Id.* The court determines whether the government has met its burden. 19 U.S.C. § 1615 (1994).

Once the government has shown probable cause to institute the forfeiture action, the claimant then must show by a preponderance of the evidence that the property was not subject to forfeiture. *United States v. $22,287.00 in U.S. Currency*, 709 F.2d 442, 446 (6th Cir.1983). Under Rule 56, if a party fails to establish the essential elements of his defense, summary judgment in favor of the movant is appropriate. Thus, an unrebutted showing of probable cause entitles the government to a judgment of forfeiture. *United States v. Certain Real Property 566 Hendrickson Blvd.*, 986 F.2d 990, 995 (6th Cir. 1993).

## DISCUSSION

In reviewing the government's summary judgment motion, the court must view the facts and any inferences therefrom in the light most favorable to the claimant. For the most part, the parties agree about the facts surrounding this seizure. The real dispute is over the inferences to be drawn from those facts.

### A. Connection With Crime

The government argues that an aggregation of the following leaves no triable issue for the jury concerning whether Mr. Bush's property was substantially connected to illegal drug activity: (1) Mr. Bush paid for both vehicles with cash or cash substitutes totaling $40,735; (2) Mr. Bush has a record of arrests and convictions for illegal drug activity; (3) Mr. Bush used confederates to structure his purchase of the Corvette to avoid the IRS's cash reporting requirements; (4) Mr. Bush urged the jeep salesman not to report his cash purchase to the federal government; (5) Mr. Bush has not worked a "regular job" in the past five years; (6) an IRS agent, detailed to the DEA task force, has described Mr. Bush's activities as consistent with drug traffickers, who often hide profits by purchasing expensive assets with cash; and (7) Mr. Bush has not responded to the government's claim that the Corvette was involved in a completed or attempted illegal drug transaction.

Claimant states that the government's evidence is too tenuous to meet its burden to establish probable cause, particularly since the government is the party moving for summary judgment. The court agrees.

In a nutshell, the government's case against Mr. Bush is: convicted drug dealer + lots of cash = forfeiture. Mr. Bush has not been arrested or charged with any drug crime since he bought his vehicles, and, as discussed below, the facts upon which the government relies present only a suspicion that he used his vehicles in a drug transaction or purchased them with drug money. Certainly, claimant has raised an issue of material fact as to whether Plaintiff has shown a "substantial connection" between his two vehicles and criminal activity involving narcotics.

This is an easier call than the facts presented in *United States v. Three Tracts of Property*, 994 F.2d 287 (6th Cir.1993), in which the Sixth Circuit reversed the lower court's decision granting the government's summary judgment motion. In *Three Tracts of Property*, three members of a family were charged and convicted on a variety of crimes

related to the manufacture and sale of marijuana. The fourth family member was acquitted on all counts. The government filed an in rem proceeding to forfeit various properties, including a one-half acre tract owned by the acquitted claimant and her husband, who had been convicted. The government's evidence was that a bag of marijuana and a jar of thousands of marijuana seeds were found in a mobile home owned by the couple and which stood on the half-acre tract. The claimant had stated at trial and in an affidavit filed pursuant to the forfeiture action that she had no knowledge that the drugs or the seeds were present. The Sixth Circuit reversed the lower court's ruling granting summary judgment in favor of the government:

> This being the summary judgment record, it cannot be held that a reasonable trier of the fact could not find that this marijuana and these marijuana seeds were in this mobile home without Sandra Hall's knowledge or consent.

*Id.* at 290. Even the presence of drugs on the property in question was insufficient to prevail at the summary judgment stage when the claimant swore otherwise. Similarly, Mr. Bush stated in his affidavit that he used gambling funds to buy the vehicles, and he has submitted copies of federal tax forms showing that he at least occasionally wins at the slot machines. This is sufficient to raise a genuine issue of material fact as to whether there is a nexus between claimant's vehicles and the possession or sale of controlled substances.

In another ruling bearing on this case, the Sixth Circuit held in *United States v. $5,000 in U.S. Currency*, 40 F.3d 846 (6th Cir.1994), that the claimant's carrying large amounts of cash and a drug dog's alert to the presence of drugs on the cash did not establish probable cause for forfeiture at the summary judgment stage. An anonymous informant tipped off authorities that a drug courier would be arriving by plane in Cleveland, Ohio, carrying an attache case and illegal drugs. As passengers were getting off the plane, DEA agents targeted a taller man bearing only a passing resemblance to the informant's description and approached him and his traveling companion. A search of their luggage revealed nearly $15,000 in cash, but no drugs. A narcotics dog later signaled the presence of drugs on the currency that had been seized. The Sixth Circuit dismissed the anonymous tip as "utterly devoid of probative weight" (the claimant was six inches taller than the informant described, was not traveling alone and had neither drugs nor an attache with him) and stated that the dog sniff was unreliable because of evidence that as much as 96 percent of the nation's currency is contaminated with narcotics residue. *Id.* at 849–50. As to the large amount of cash discovered on the claimant and his companion, the court said it agreed with the Ninth Circuit that " '[f]ifteen to twenty thousand dollars is hardly enough cash, standing alone, to justify more than a suspicion of illegal activity.' " *Id.* at 850 (quoting *United States v. $191,910.00 in U.S. Currency*, 16 F.3d 1051, 1072 (9th Cir.1994)).

The government's motion also relies on Mr. Bush's criminal record (claimant was last convicted of a drug offense in 1988), most of which involved activities in Florida, but there is no evidence before the court that claimant recently engaged in selling drugs or even that he traveled to his old haunts or was spotted in a location of known drug activity. *See United States v. Thomas*, 913 F.2d 1111, 1115 (4th Cir.1990) (detailing the circumstantial evidence proffered by the government in support of its forfeiture case).

Plaintiff also cannot prevail on its motion based on the fact that Mr. Bush has not held a steady job. The Fourth Circuit addressed the issue specifically and announced a stiff standard:

> [W]here a defendant's verifiable income cannot possibly account for the level of wealth displayed *and where there is strong evidence that the defendant is a drug trafficker,* then there is probable cause to believe that the wealth is either a direct product of the illicit activity or that it is traceable to the activity as proceeds.

*Id.* at 1114 (quoting *United States v. Edwards*, 885 F.2d 377, 390 (7th Cir.1989) (emphasis added)); *see also United States v. Real Property Known As 11348 Wyoming,* 705 F.Supp. 352, 355–56 (E.D.Mich.1989) (government established probable cause on

its summary judgment motion with evidence of large amounts of cash found on claimant at time of arrest on heroin distribution charge, combined with surveillance placing him at a distribution point for illegal drugs and associates' confessions that they sold drugs for him).

■ That Mr. Bush can point to no other source of money other than his alleged winnings may weigh against him at trial, but at the summary judgment stage, the court does not make credibility determinations about direct evidence. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir.1994). The government has presented no records, tax returns or firsthand testimony negating Mr. Bush's claim to be a gambler. *See Thomas*, 913 F.2d at 1115 (4th Cir.1990) (detailing the circumstantial evidence proffered by the government in support of its forfeiture case).

■ The government need not establish a direct connection between property and the illegal activity that allegedly renders the property subject to forfeiture, but a nexus is required. Claimant has raised a genuine issue of material fact to dispute the government's claim that there is a substantial connection linking his income to drug activities. Under Rule 56, a genuine issue for trial exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Considering the totality of evidence, a reasonable jury could find the government has not met its burden to show a "substantial connection" between the seized property and an illegal drug transaction.

B. Currency and Foreign Transaction Reporting Act (CFTRA)

Federal law requires that financial institutions file a currency transaction report ("CTR") with the Treasury Department for every transaction involving more than $10,000 in cash. 31 U.S.C. § 5313(a); 31 C.F.R. §§ 103.22(a)(1), 103.27(a)(4) (1997). The government alleges that Mr. Bush structured the purchase of his Corvette to evade these reporting requirements in violation of 31 U.S.C. § 5324, which provides that "[n]o person shall for the purpose of evading the

reporting requirements of section 5313(a) . . . structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more domestic financial institutions."

■ By its language, this law contains a *mens rea* element: a person must structure his or her transaction "for the purpose of evading" the currency reporting requirement. It is elementary that a person cannot act with the purpose of evading the requirements if he or she does not know of the requirements. *United States v. Dollar Bank Money Market Account No. 1591768456*, 980 F.2d 233, 237 (3d Cir.1992); *see also United States v. Wollman*, 945 F.2d 79, 81 (4th Cir.1991); *United States v. $200,000*, 805 F.Supp. 585, 590–91 (N.D.Ill.1992); *United States v. 316 Units of Municipal Securities in the name of Efrain Gonzalez*, 725 F.Supp. 172, 178–79 (S.D.N.Y.1989). Note this does not mean the government must show that the claimant knew that the method by which he or she structured the transaction was *illegal*, only that the violating party "had knowledge of the currency reporting requirements and acted to avoid them." *United States v. Rogers*, 962 F.2d 342, 344 (4th Cir.1992).

■ The government's affiant stated that he was told that Mr. Bush asked the salesman who sold him the jeep not to fill out the CTR. Mr. Bush denied ever having dealt with the jeep salesman. (Bush Aff. ¶ 6.) According to Mr. Bush, the salesman who sold him the Corvette told him that his purchase would *require* a cashier's check, thus providing a plausible, albeit unlikely, alternative explanation for the odd way in which he purchased the car. The salesman also may not have connected the "certain form" he said he had to file with the $10,000 threshold under § 5313. In previous cases granting summary judgment to the government, the court was presented with much clearer evidence that the claimant knew of the reporting requirements under § 5313. *See Dollar Bank*, 980 F.2d at 238–39 (listing cases). Where a claimant has established uncertainty on the basis of one of the required elements—here, specific intent—summary judgment is inappropriate. *316 Units*, 725

F.Supp. at 179. When the facts are viewed in the light most favorable to the nonmoving party, there is a material issue for the trier of fact whether Mr. Bush knew of the reporting requirements under the CFTRA and acted to avoid them. *Wollman,* 945 F.2d at 81.

### ORDER

For the foregoing reasons, Plaintiff's motion for summary judgment is **DENIED.**